MARQUETTE NATIONAL BANK, Plaintiff-Appellee, *v.* HERITAGE PULLMAN BANK & TRUST COMPANY, Defendant-Appellant.

First District (1st Division)   No. 81—1264

Opinion filed September 27, 1982.

Michael E. Renaldi, of Gannon & Oosterbaan, of Alsip, for appellant.

Donald E. Figliulo and Judy I. Byrd, both of Arvey, Hodes, Costello & Burman, of Chicago, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Summary judgment was entered in favor of plaintiff Marquette National Bank (Marquette) and against defendant Heritage Pullman Bank & Trust Company (Heritage) in the amount of $7,493.67. Heritage's motion for a rehearing was denied and this appeal ensued.

Marquette's claim against Heritage arose as the result of the actions of Craig Skinner, a customer of both banks. On February 1, 1978 (all dates hereinafter referred to will be for the year 1978), Skinner deposited a check for $4,000, drawn on his Heritage account, to his corporate account at Marquette. On February 2 a similar check for $4,000 was deposited in Skinner's corporate account. These checks

were forwarded through proper Federal Reserve Bank channels to Heritage. When presented with the checks, Heritage dishonored them because Skinner did not have sufficient funds in his account to pay the items. Heritage sent the items back to Marquette through the same Federal Reserve Bank channels. On February 8 Marquette allowed $8,000 in alleged collected funds to be withdrawn from Skinner's account. At no time did Heritage give telephonic or other electronic notice to Marquette of the dishonor.

Marquette's complaint alleges that if Heritage had provided proper notice of dishonor withdrawal of the funds by Skinner could have been prevented. Marquette further alleged that at the time Heritage knew of the dishonored checks Skinner had on deposit at Marquette collected funds in the amount of $8,868.05. Thus, it is alleged, Heritage's negligence in not sending notice of dishonor by telephone or electronic means resulted in damages to Marquette of $8,000 less recoveries against Skinner's account of $506.33.

Both parties filed motions for summary judgment. In its motion Heritage asserted that copies of Skinner's bank statements from Marquette reflect that all credits shown thereon were uncollected funds. Therefore, there could be no damages suffered by Marquette as a result of Heritage's actions or inaction. The trial court denied this motion.

Marquette's motion detailed the process by which the checks written by Skinner and deposited in the corporate account were cleared through the Federal banking system. For the purposes of this motion and this appeal, Heritage does not dispute this course of events.

Skinner drew check #246 on his Heritage account payable to Marquette in the amount of $4,000. This check was dated February 1 and was deposited at Marquette on that date. Prior to its midnight deadline,[1] Marquette forwarded this check for collection to the Federal Reserve Bank of Minneapolis. The check was forwarded to the Federal Reserve Bank of Chicago which, in turn, presented the item for payment to Heritage on February 3. Since February 3 was a Friday, Heritage's midnight deadline was Monday, February 6. Within that time Heritage dishonored the item and returned it to the Federal Reserve Bank of Chicago. The check was, in turn, properly returned to the Federal Reserve Bank of Minneapolis. The Federal Reserve Bank of

---

[1]"Midnight deadline" with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later. Ill. Rev. Stat. 1979, ch. 26, par. 4—104(h).

Minneapolis returned the item by a cash letter dated February 8 to Marquette. The cash letter was actually received on February 9.

On February 2 Skinner wrote check #247 on his account at Heritage in the amount of $4,000 payable to Marquette. This check was also deposited into the corporate account maintained at Marquette on February 2. The check was forwarded to the Federal Reserve Bank of Chicago by Marquette before its midnight deadline on February 2. The check was presented to Heritage on Saturday, February 4. On February 6 Heritage dishonored the check and returned the item to the Federal Reserve Bank of Minneapolis. Within its midnight deadline the latter bank returned the item to Marquette by cash letter dated February 8. It was received on February 9.

Heritage further agrees that it did not send notice of dishonor via telephone, telegraph or other electronic means at the time it learned that Skinner's account had insufficient funds on February 6. This type of action would be required upon nonpayment of any item of $2,500 or more pursuant to Federal Reserve Regulation J and the operating letters issued thereunder. 12 C.F.R. sec. 210.3; Operating Letter No. 4 of the Federal Reserve Bank of Chicago; Operating Letter No. 5 of the Federal Reserve Bank of Minneapolis.

Marquette asserted in its motion for summary judgment that sufficient collected funds existed in Skinner's account on February 6 to charge back the items if notice had been properly sent by Heritage. This assertion is supported in the record by the affidavit of Michael Daly, a vice president in charge of proof and bookkeeping operations at Marquette. The trial court granted summary judgment in favor of Marquette.

On appeal, Heritage contends the record is not free from doubt that Skinner's corporate account at Marquette had on deposit collected funds sufficient to cover the dishonored items. It is argued that the affidavit supporting the motion contains no factual basis for the assertion that $8,868.05 in collected funds existed in the corporate account. Further, Heritage argues, copies of Marquette's bank statements filed as exhibits with their motion for summary judgment contradict the assertion that the funds in the Marquette account were collected. We agree and reverse the trial court's order granting summary judgment to Marquette.

Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) In ruling on a motion for summary

judgment, the trial court must construe the pleadings, depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the opponent. (*In re Estate of Tomaso* (1980), 82 Ill. App. 3d 286, 402 N.E.2d 702.) Where well-alleged facts in an affidavit are not contradicted by a counteraffidavit, they must be taken as true notwithstanding contrary averments in an adverse party's pleadings. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) However, even though the party opposing the motion for summary judgment fails to file counteraffidavits, the moving party should not be awarded summary judgment unless the affidavits filed in support of the motion establish the judgment as a matter of law. *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.

■ The appropriate measure of damages in situations such as this is "the amount of the item reduced by an amount which could not have been realized by the use of ordinary care." (Ill. Rev. Stat. 1979, ch. 26, par. 4—103(5).) This measure of damages contemplates an award that could be less than the face value of the item. When it is established that some part or all of the item could not have been collected even by the use of ordinary care the recovery is reduced by the amount which would have been in any event uncollectible. Ill. Ann. Stat., ch. 26, par. 4—103, Uniform Commercial Code Comment, par. 6, at 441-42 (Smith-Hurd 1963).

■ Our analysis of the record reveals a genuine issue of material fact still remains as to damages. Bank statements contained in the record as exhibits do not clearly reflect collected funds in the amount claimed by Marquette. That amount, $8,868.05, is arrived at only after including the two deposits at issue here, both of which the record shows were returned. The Daly affidavit does not state the basis for its assertion that the $8,868.05 was collected nor does it contain any further support as to how that figure was derived.

Considering all of the evidence in a light most liberally for the nonmovant, we feel the evidence is not clear and free from doubt that Marquette suffered the damages alleged. *Meakens v. City of Chicago* (1980), 86 Ill. App. 3d 60, 407 N.E.2d 893, *appeal denied* (1980), 81 Ill. 2d 602.

We therefore reverse the trial court's order granting summary judgment to Marquette and remand for further proceedings.

Reversed and remanded.

CAMPBELL, P. J., and GOLDBERG, J., concur.