HAROLD F. MOTZ *et al.*, Plaintiffs-Appellants, *v.* CENTRAL NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83-631

Opinion filed November 18, 1983.

Lawrence T. Stanner and Daniel M. Houlihan, both of Chicago, for appellants.

Andrew D. Thomas, Gregory Prosen, and Clark D. Forsythe, all of Homewood, for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from summary judgment for defendants in an action to set aside the sale of plaintiffs' beneficial interest in a land trust and in a consolidated action in forcible entry and detainer brought by defendants against plaintiff Harold Motz (Harold). Plain-

tiffs contend that summary judgment was improperly granted. In the alternative, they maintain that the trial court erred in ruling that they were not entitled to a homestead exemption.

It is undisputed that plaintiffs purchased the subject property, a single-family residence located in Glenwood, Illinois, as joint tenants in 1966, assuming a $27,000 mortgage as part of the consideration therefor. In 1968, the property was deeded to Steel City National Bank of Chicago (Steel City),[1] as trustee under Trust No. 562 (the Steel City trust), with plaintiffs as sole beneficiaries thereunder. Subsequently, plaintiffs encountered financial difficulties, and Harold sought a loan from Steel City, signing a 60-day promissory note on October 7, 1980, secured by a purported pledge of 100% of the beneficial interest in the Steel City trust. Harold was unable to pay the note when it became due, and the debt was refinanced by a 180-day promissory note in the total amount of $19,141.57, again secured by a purported pledge of 100% of the beneficial interest in the Steel City trust. Each note was signed solely by Harold. When the loan was not repaid, Steel City sold the beneficial interest at public sale on January 8, 1982, subject to the prior mortgage, then in default, to Arthur M. Heller (Heller) acting as nominee of Central National Bank, as trustee (CNB) under Trust No. 24962 (the CNB trust), for $22,501—one dollar more than the amount then due Steel City under the defaulted note.

Plaintiffs received notification of the sale to Heller, and Heller, as agent of Magna Management Company (Magna), offered to rent the premises to plaintiffs under a month-to-month lease. When plaintiffs refused that offer, Magna and CNB brought a forcible entry and detainer action against Harold on February 5, 1982. Shortly thereafter, plaintiffs filed a complaint seeking to set aside the sale of the beneficial interest in the subject property, and the two actions were consolidated at Harold's request.

Plaintiffs' amended complaint alleged in pertinent part that the property in question had a fair market value of $100,000, and that Steel City failed to sell the beneficial interest therein in a commercially reasonable manner, as required by section 9—504 of the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1981, ch. 26, par. 9—504), in that it failed to make reasonable efforts to attract bidders likely to bid on the property, imposed unreasonable terms of sale—making the property extremely unattractive to most potential bidders, sold the property for a grossly inadequate amount in a one-bidder sale, and otherwise conducted the sale in a commercially unreasonable

[1]The action remains pending in the trial court as to Steel City.

manner. Plaintiffs further alleged that Heller knew that the sale was not conducted in a commercially reasonable manner and was defective, and that he collusively entered into the transaction with Steel City.

Defendants CNB and Magna, without answering the amended complaint, moved for summary judgment in both actions, maintaining that there were no genuine issues as to any material facts in either, and asserting also that plaintiffs' complaint failed to state a cause of action against them. In support thereof, defendants submitted Heller's affidavit, which states in pertinent part that he is a beneficiary under the CNB trust; that he operates a realty and management business, doing business as Magna Management Company; that he became aware of the sale of plaintiffs' beneficial interest through a public notice published in a newspaper of general circulation; that he was the only bidder to appear at Steel City's offices at the time specified in the public notice; that he bid and paid $22,501 for the 100% beneficial interest in plaintiffs' land trust; that he caused Steel City, as trustee under the Steel City trust, to convey its legal and equitable title to CNB under the CNB trust; that the public sale was conducted in the usual and customary practice of such financial institutions; that he did not wrongfully collaborate with Steel City as trustee; and that he gave good and valuable consideration and was a *bona fide* purchaser for value.

The trial court granted defendants' motions for summary judgment in both actions and awarded possession of the subject premises to Heller, ordering plaintiffs to pay $15 per day rent to Heller from the date of judgment to the date they vacated the premises. Plaintiffs' post-trial motion seeking vacation of the order or, in the alternative, modification thereof to provide compensation for their homestead rights, was denied, and this appeal followed.

OPINION

Plaintiffs contend that the summary judgments were improperly granted. They argue (a) that defendants have failed to negate the allegations of their complaint or set forth facts which would entitle them to summary judgment as a matter of law; and (b) that defendants have failed to establish their entitlement to summary judgment in the forcible entry and detainer action, because there were questions of fact as to the validity of the sale.

On a motion for summary judgment, the trial court must determine whether there is a genuine issue as to any material fact that requires a trial. (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375

N.E.2d 468.) The motion should be granted where the pleadings, exhibits, depositions, and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) However, because this is a drastic measure, it is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. (*Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d 1033; *Pitler v. Michael Reese Hospital* (1980), 92 Ill. App. 3d 739, 415 N.E.2d 1255.) Furthermore, where the movant seeks to establish evidentiary facts by way of affidavit, Supreme Court Rule 191 requires that the affidavits relied upon consist of facts admissible in evidence, not mere conclusions (87 Ill. 2d R. 191); and although facts in an affidavit which are not contradicted by counteraffidavit will be taken as true despite contrary averments in the pleadings (*Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d 1033), the movant must present evidence which precludes any possible liability before the party opposing summary judgment is required to present some factual basis by way of counteraffidavit which would arguably entitle him to judgment (see *Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 398 N.E.2d 1202). Thus, we have held that "even though the party opposing the motion for summary judgment fails to file counteraffidavits, the moving party should not be awarded summary judgment unless the affidavits filed in support of the motion establish the judgment as a matter of law." *Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 535, 440 N.E.2d 1033, 1035-36.

In the instant action, plaintiffs have relied upon the allegations in their pleadings and various exhibits of record, and have not filed any counteraffidavits. Therefore, we must take as true the facts, but not the conclusions, contained in Heller's affidavit in support of the motion in reviewing the trial court's granting of summary judgment. The parties agree that the sale in question is governed by article 9 of the Code, relating to secured transactions. (Ill. Rev. Stat. 1981, ch. 26, par. 9—101 *et seq.*) Plaintiffs' complaint relies in particular on section 9—504, which provides in relevant part that "every aspect of the [sale of collateral upon default] including the method, manner, time, place and terms must be commercially reasonable" (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3)) and that, where the secured party fails to comply with these requirements, a purchaser at the sale takes free of all rights and interests of the debtor only if "in the case of a public sale

*** the purchaser has no knowledge of any defects in the sale and *** he does not buy in collusion with the secured party ***." Ill. Rev. Stat. 1981, ch.26, par. 9—504(4)(a).

Plaintiffs' amended complaint alleges that the terms of the sale and the price received were commercially unreasonable, that Heller knew of these defects, and that he purchased in collusion with the secured party—Steel City. Defendants countered these allegations with Heller's affidavit wherein he states that he learned of the sale from a public notice in a newspaper of general circulation. He does not indicate what newspaper contained the notice, and the only such notice appearing in the record advertises a sale to take place in October 1981; whereas, it is undisputed that the sale in question took place on January 8, 1982. Nevertheless, that notice does contain the terms which plaintiffs allege are commercially unreasonable; therefore, it appears that Heller did have knowledge of those terms at the time of the sale. Plaintiffs' amended complaint further alleges that the sale was commercially unreasonable because Heller was the sole bidder and because the property in question had an estimated fair market value of $100,000 but was sold for only $22,501.

■ While it appears from his affidavit that Heller had knowledge of the terms, price, and method of sale which plaintiffs allege were commercially unreasonable, knowledge of these defects alone is insufficient, as the purchaser also must act in collusion with the secured party. Here, although plaintiffs allege such collusion, Heller's affidavit only denies collusion with Steel City, *as trustee*. It is our view that this denial is insufficient, since it is clear from the record that in selling the beneficial interest, Steel City was acting in its capacity as a secured party under the security agreement, not as trustee under the Steel City land trust. Absent that security agreement, Steel City had no power as trustee to sell the beneficial interest; it could only deal with the title to the property as directed by the beneficial owners.

■ Since Heller's affidavit fails to establish that he did not know of the alleged defects in the sale or that he did not purchase in collusion with the secured party, summary judgment was proper only if the evidence established that Steel City's disposition of the collateral was, contrary to plaintiffs' allegations, commercially reasonable. Heller's affidavit seeks to establish this by his averment that "the public sale was conducted in the usual and customary practices of such financial institutions," apparently relying on section 9—507 of the Code, which provides in relevant part that "[i]f the secured party *** sells the collateral in the usual manner in any recognized market therefor *** or if he has otherwise sold in conformity with reasonable commercial

practices among dealers in the type of property sold he has sold in a commercially reasonable manner." (Ill. Rev. Stat. 1981, ch. 26, par. 9—507.) However, Heller's affidavit contains no basis for his conclusion that the sale was conducted in "the usual and customary" manner of "such financial institutions"; nothing herein establishes his expertise in such matters, or his qualifications to give his opinion as to what is or is not "usual and customary" among banking institutions in the sale of a beneficial interest in a land trust pursuant to section 9—504. Because Heller's statement constitutes a conclusion rather than a fact admissible into evidence, as required by Supreme Court Rule 191 (87 Ill. 2d R. 191), it is our view that defendants have failed to establish their entitlement to judgment as a matter of law, that a genuine issue of material fact existed with regard to the commercial reasonableness of the sale, and that summary judgment was therefore improper.

Furthermore, although neither party has raised the question here, we note that genuine issues of material fact exist as to whether Steel City had an enforceable security interest in, and was therefore able to sell, Emma Motz' interest in the subject property, as well as whether defendants were entitled to possession as against Emma. It is clear from the pleadings and exhibits before the trial court that Emma and Harold owned the property as joint tenants but only Harold signed the security agreement. Section 9—203 of the Code provides in part that "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless" (a) the debtor has signed the security agreement; (b) value has been given; and (c) "the debtor has rights in the collateral." (Ill. Rev. Stat. 1981, ch. 26, par. 9—203.) The owner of property may become a "debtor" for purposes of the Code by pledging his property as collateral for the debt of another (see Ill. Rev. Stat. 1981, ch. 26, par. 9—112), but the Uniform Commercial Code Comment to section 9—112 indicates that "[w]hether a person who does not own property has authority to encumber it for his own debts *** [is a matter] to be decided under other rules of law and [is] not covered by this section" (emphasis added) (Ill. Ann. Stat., ch. 26, par. 9—112, Uniform Commercial Code Comment, at 92 (Smith-Hurd 1974)), and the Illinois Comment to this section indicates that even where a third party has authorized the use of his property as collateral for the debt of another, the security agreement is enforceable as against the third party only if he has signed the agreement (Ill. Ann. Stat., ch. 26, par. 9—112, Illinois Code Comment, at 91 (Smith-Hurd 1974)).

A number of courts in other jurisdictions, in construing sections

9—203 and 9—112 and the comments pertaining thereto, have held that "[o]ne without authority to encumber the property of another can not grant a valid security interest in such property" (*Val-U Construction Co. of South Dakota, Inc. v. Contractors, Inc.* (1983), 213 Neb. 291, 295, 328 N.W.2d 774, 777; see also *Towe Farms, Inc. v. Central Iowa Production Credit Association* (S.D. Iowa 1981), 528 F. Supp. 500) and that, even if the owner of the collateral may be considered a debtor for purposes of section 9—203 by reason of his authorization of the use of his property as collateral, a purported security interest is enforceable against him only if the security agreement has been signed by him (*Baystate Drywall, Inc. v. Chicopee Savings Bank* (1982), 385 Mass. 17, 429 N.E.2d 1138), although the true owner may be estopped from denying the creation or existence of a security agreement (*In re Pubs, Inc.* (7th Cir. 1980), 618 F.2d 432). Furthermore, we note that in the case of joint tenants, other courts have held that the signing of a security agreement by only one of the joint tenants without the authorization or consent of the co-tenant, affects only the interest of the signing tenant, and that the ownership rights of the nonsigning co-tenant are superior to those of the secured party. *Clearfield State Bank v. Contos* (Utah 1977), 562 P.2d 622.

■ We believe that the same reasoning is applicable under the Illinois Code, since the rules of law stated by the above jurisdictions are identical to the rules of law which obtain in this State; namely, that an assignor can convey no greater title or interest than he possesses (*Angelina County Lumber Co. v. Michigan Central R.R. Co.* (1929), 252 Ill. App. 82) and that "an act or contract by one joint tenant respecting the joint property without the authority or consent of his co-tenants cannot bind or prejudicially affect the latter" (23 Ill. L. & Prac. *Joint Tenancy* sec. 23 (1979); see *Jeffers v. Brua* (1963), 40 Ill. App. 2d 156, 189 N.E.2d 374). Therefore, since Emma is a joint tenant, did not sign the security agreement, and no facts thus far presented establish that she authorized or consented to the pledge of her interest as collateral or is estopped to deny the validity of the agreement, summary judgment affirming the sale of 100% of the beneficial interest and granting possession to defendants was improper.

■ As a general rule, Supreme Court Rule 341(e)(7), which provides that an issue not raised by the appellant is deemed waived, would preclude our consideration of this latter issue. (87 Ill. 2d R. 341(e)(7).) However, Supreme Court Rule 366, which is analogous to the plain error doctrine in criminal cases (*Schutzenhofer v. Granite City Steel Co.* (1982), 93 Ill. 2d 208, 443 N.E.2d 563) provides that "[i]n all appeals the reviewing court may, in its discretion, and on

such terms as it deems just *** (5) enter any judgment and make any order *** and grant any relief *** that the case may require." (87 Ill. 2d R. 366.) It has been held that Rule 366 "recognize[s] that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." (*Hux v. Raben* (1967), 38 Ill. 2d 223, 225, 230 N.E.2d 831, 832; see also *Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) It is our view that, in the instant case, a just result will not be reached unless the question of Emma Motz' rights is addressed. Under the facts thus far developed in the trial court, defendants have failed to present evidence which would establish that an enforceable security agreement existed authorizing sale of the entire beneficial interest or that they were entitled to possession as against Emma. Moreover, our determination herein in no way precludes defendants from presenting evidence on this issue, since they are entitled to present such facts as exist upon remand of this cause. In addition, the issues presented by the facts now before us are questions never before considered by our courts, and we believe that resolution thereof upon a full factual record is important to the development of a sound body of precedent.

In the light of our disposition of the first issue raised by plaintiffs, it is unnecessary at this time to address their alternative argument.

For the reasons stated, the order of the trial court granting summary judgment to defendants is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded for further proceedings.

WILSON, P.J., and LORENZ, J., concur.