T.E.C. & ASSOCIATES, INC., Plaintiff-Appellant, v. ALBERTO-CULVER COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 84—1566

Opinion filed March 19, 1985.

Marvin A. Miller & Associates, Ltd., of Chicago (Marvin A. Miller and Vincent L. Ditommaso, of counsel), for appellant.

Fox & Grove, Chartered, of Chicago (Russell M. Kofoed and Jody M. Pucel, of counsel), for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff T.E.C. & Associates, Inc. (TEC), is an Illinois corporation engaged in the business of recruiting individuals for employment vacancies in various business concerns. Alberto-Culver Company (Alberto) is a foreign corporation licensed to do business in Illinois with an office in Melrose Park. In January of 1982, Alberto had an opening in its data processing department for a senior programmer. An applicant named Mark West had an interview with Alberto on January 28, 1982, for the senior programmer position, and was subsequently hired by Alberto in February of 1982 at a salary of approximately $19,000 per year.

At the time TEC first solicited Alberto to employ West, TEC was not licensed as an employment agency by the Illinois Department of Labor pursuant to the Private Employment Agencies Act (PEAA). Alberto admits it received TEC's invoice containing TEC's fee arrangement and fee schedule relative to Mark West but refused to pay TEC because of TEC's failure to obtain its employment agency license pursuant to the PEAA. Ill. Rev. Stat. 1981, ch. 111, par. 901.

On April 30, 1982, TEC sued Alberto for breach of contract, seeking damages, prejudgment interest, and attorney fees. On June 8, 1982, Alberto filed its answer and two affirmative defenses. Alberto's first affirmative defense was based on TEC's failure to have a license. Its second defense was based upon TEC's alleged wrongful solicitation of one of Alberto's programmers to leave the employ of Alberto at the same time TEC was attempting to place Mark West in the senior programmer position at Alberto.

A criminal action had been filed against Marc Leon, d/b/a TEC, because of the alleged violation of the PEAA. TEC's motion to dis-

miss that action, which contained an affidavit of Mark Leon, was granted on March 14, 1982.

On March 15, 1982, Alberto filed a motion for summary judgment which contained an affidavit of the vice-president of Alberto in its management information services section and various other exhibits. In its motion, Alberto maintained that the failure of TEC to obtain the employment agency license precluded it from recovering any sums. Alberto further maintained that TEC did not fall within the exception to the licensing requirement because the senior programmer position was not an executive or professional position as used in the PEAA. The PEAA exempts from the licensing requirement those persons involved in management consulting who place individuals in executive or professional positions. Alberto relied on the definition of executive and professional contained in the Fair Labor Standards Act (29 C.F.R. pt. 541), which is used in Illinois to define those terms in its own minimum wage law. (Ill. Rev. Stat. 1981, ch. 48, par. 1004a(2)(E).) TEC filed its response to Alberto's motion, which included an affidavit of Marc Leon, the president of TEC, as exhibit A, a group exhibit B containing TEC's motion to dismiss and amended motion to dismiss the criminal action previously brought against Leon, and Leon's affidavit attached in that proceeding, exhibit C, which was the order dismissing the criminal action, and exhibit D, which was the U.S. Department of Labor regulations for the Fair Labor Standards Act defining the term professional. (29 C.F.R. sec. 541.301 *et seq.*) Alberto filed its reply to TEC's response moving to strike TEC's affidavits as insufficient under Supreme Court Rule 191 and to strike TEC's exhibit C.

After hearing arguments on the motion, the trial court struck the two affidavits of Marc Leon as well as exhibit C. The court also found that the senior programmer position at Alberto was not an executive or professional position under the PEAA and granted summary judgment in favor of Alberto. The counterclaim against TEC was ordered to remain pending, and the court found no just reason to delay enforcement or appeal of the judgment.

TEC appealed, claiming that the trial court erred in striking its exhibits A, B, and C attached to its response, that there exists a genuine issue of material fact as to whether the senior programmer position at Alberto is an executive or professional position, that the programmer position is both an executive and a professional position, and that TEC is not barred from recovering on its contract with Alberto.

■ The first issue to be addressed by this court is whether the trial court erred when it struck the three exhibits filed by TEC in its

response to Alberto's motion for summary judgment. The first two exhibits were affidavits filed by TEC's president, Marc Leon. Supreme Court Rule 191 (87 Ill. 2d R. 191) requires that affidavits relied upon must consist of facts admissible in evidence to which the affiant could testify, not mere conclusions or other inadmissible matter. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497.) Affidavits filed in opposition to a motion for summary judgment, like TEC's, will be liberally construed in favor of the nonmovant. *Hendricks v. Deters* (1973), 13 Ill. App. 3d 976, 978, 301 N.E.2d 625.

Even under a liberal construction of the first affidavit, exhibit A, we find that is insufficient under Rule 191. The two key paragraphs are bald assertions by Mr. Leon representing his conclusion on one of the ultimate issues of the case, namely, the title to be afforded to those in the field of computer programming. These averments are not evidentiary facts. Also, it cannot be gleaned from the affidavit as a whole that Mr. Leon would be able to testify to these matters. The trial court was therefore correct in striking exhibit A, because it contains mere conclusions of Mr. Leon. In addition, remaining portions of the affidavit are insufficient to rebut any of the material allegations of Alberto's motion and attached affidavit. An examination of the second affidavit, which formed a part of group exhibit B, results in the same conclusion. This affidavit, like exhibit A, contains many conclusory statements that do not reasonably appear to be within the affiant's personal knowledge. The trial court was therefore correct in striking this affidavit as well.

■ Exhibit C is a copy of the order dismissing the criminal action that had been brought against Marc Leon. That order, however, does not contain any reason for the dismissal and merely recites the fact of dismissal. Assuming the order would be admissible in this case, it would be admissible only to show that the criminal action had been dismissed. It does not show, as TEC suggests, that TEC falls within the exception to the licensing requirement. Although Marc Leon, d/b/a TEC, was dismissed from the criminal action, that dismissal would not preclude a civil proceeding based on the same charge, assuming such a proceeding existed, because of the differing standards of proof involved in the two actions. (See *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 908, 420 N.E.2d 618.) *A fortiori*, the criminal dismissal does not suggest that TEC is exempt from the licensing requirement or that Alberto is precluded from raising the fact of nonlicensure as a defense to TEC's contract action. Consequently, the relevancy of the order of dismissal is so tenuous that the trial court did not err in ordering it stricken.

██ The next question to be resolved is whether, after striking TEC's exhibits, entry of summary judgment for defendant was proper. Summary judgment will only be granted if the pleadings, affidavits and depositions on file disclose no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (*Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 975, 452 N.E.2d 649.) Upon review of the trial court's entry of summary judgment, the appellate court must determine whether the trial court was correct in ruling that no genuine issue of material fact was raised and whether entry of the judgment was correct as a matter of law. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133.) Summary judgment "is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto." (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958.) Also, where well-alleged facts in the movant's affidavit are not contradicted by a counteraffidavit, they must be accepted as true "notwithstanding the existence of contrary averments in the adverse party's pleadings which merely purport to establish *bona fide* issues of fact." (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497.) In the present case, the trial court's striking of TEC's affidavits has effectively left the well-pleaded facts in Alberto's supporting affidavit uncontroverted and hence admitted. However, even where counteraffidavits have not been filed, or where they have been stricken, the moving party should not be awarded summary judgment unless the affidavit in support of the motion establishes the judgment as a matter of law. (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958.) Consequently, in situations where summary judgment was granted on an uncontroverted affidavit, the order will be reversed if it is apparent that the moving party's affidavit does not support the entry of judgment as a matter of law. *Estate of Kern v. Handelsman* (1983), 115 Ill. App. 3d 789, 793, 450 N.E.2d 1286.

The affidavit filed by Alberto's vice-president of management information services, in pertinent part, provides as follows:

"3. The job description for the position of senior programmer at Alberto-Culver in effect during all of February 1982, is attached to the Motion of Alberto-Culver Company as Exhibit A and incorporated herein.

4. In his position as senior programmer, Mark West does not manage any Alberto-Culver Company department or subdivision thereof, does not customarily or regularly direct the work

of any two or more other Alberto-Culver Company employees, does not have the authority to hire or fire other Alberto-Culver Company employees, does not suggest or recommend the hiring, firing, advancement, or promotion of Alberto-Culver Company employees, does not customarily and regularly exercise any discretionary powers, and does not devote more than 20% of his hours of work in the work week to activities which are not directly and closely related to the performance of his work as a senior programmer.

5. By the time of his employment by Alberto-Culver Company in February 1982, Mark West had not attained a bachelors degree from any college and was attending courses at Moraine Valley Community College which would lead to an associates degree, which is set forth in the Resume of Mark West received by Alberto-Culver Company in January 1982, a copy of which is attached hereto and incorporated herein."

One of the seminal questions of this lawsuit is whether the senior programmer position was an executive or professional position. If it were such a position, then TEC was exempt from the licensing requirement of the PEAA. We find that the affidavit of Alberto and the job description and resume incorporated therein demonstrate that the trial court was correct in determining that there was no genuine issue of fact as to whether the senior programmer position was an executive or professional position.

Section 4 of the PEAA (Ill. Rev. Stat. 1981, ch. 111, par. 904) provides in relevant part:

"It shall be unlawful for any person to act as an employment counsellor, or to advertise, or assume to act as an employment counsellor, without first obtaining a license of such employment counsellor, from the Department of Labor."

Certain persons are exempted from the licensing requirement if they meet the exemption requirements of section 14 (Ill. Rev. Stat. 1981, ch. 111, par. 914):

"The term 'employment agency' means any person engaged for gain or profit in the business of securing or attempting to secure employment for persons seeking employment or employees for employers. However, the term 'employment agency' shall not include any person in the business of management consulting or management executive recruiting, and who in the course of such business is retained by, acts solely on behalf of, and is compensated solely by, an employer to identify, appraise or recommend an individual or individuals for consideration for an

executive or professional position ***."

Nowhere does the Act define the terms executive or professional and Alberto urges this court, as it did the trial court, to use the definitions found in the Fair Labor Standards Act employed by Illinois under its minimum wage law. (Ill. Rev. Stat. 1981, ch. 48, par. 1004a(2)(E).) The minimum wage law first employed the Federal definitions effective January 10, 1977, pursuant to Public Act 79—1523. (Ill. Ann. Stat., ch. 48, par. 1004a (legislative history) (Smith-Hurd Supp. 1984-85).) The exemption of a business engaged in recruiting persons for executive or professional positions from the licensing requirement of the PEAA was enacted on July 26, 1967, pursuant to Senate Bill No. 667 (1967 Ill. Laws, at 2046), and that portion of the Act has not been changed.

The Federal definitions were issued pursuant to the Fair Labor Standards Act (29 U.S.C. sec. 213 (1982) and are codified at 29 C.F.R. pt. 541. An executive is defined as any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of [sic] subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent *** of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section; *** and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ***." C.F.R. sec. 541.1.

A professional is defined as one whose primary duty consists of performing:

"(a) ***

(1) Work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study *** or

(2) Work that is original and creative in character in a recognized field of artistic endeavor *** and the result of which

depends primarily on the invention, imagination, or talent of the employee, or

(3) Teaching, tutoring, instructing, or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in the school system or educational establishment or institution by which he is employed; and

(b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

(c) Whose work is predominatly [*sic*] intellectual and varied in character \*\*\* and is of such character and that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

(e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week \*\*\*." 29 C.F.R. sec. 541.3.

The uncontroverted averments in Alberto's affidavit explicitly demonstrate that the senior programmer position filled by Mark West is not an executive or professional position as defined above. Also, the senior programmer job description does not suggest that the position would entail the supervisory powers, discretionary activities, management responsibilities or advanced knowledge contemplated by the definitions. Whether these definitions should apply to the PEAA remains for consideration in light of their applicability to the Illinois minimum wage law.

■■ Our supreme court has said that "[s]tatutes which relate to the same thing or to the same subject or object are *in pari materia* although they were enacted at different times," and that such statutes should be construed together. (*People v. Wallace* (1920), 291 Ill. 465, 470, 126 N.E. 175.) Both Illinois statutes in question here relate to the same subject, employment, and both separate executives and professionals as exceptions to their general statutory provisions. A reading of both statutes discloses a legislative determination that executive and professional positions are not the type warranting the protections afforded by either the minimum wage law overtime provision or the PEAA. The customary nature of these positions and their corresponding responsibilities remove them from the ambit of generic legislative action in terms of overtime compensation and protection afforded them from unlicensed employment agencies. The need for a

uniform definitional source thus becomes imperative where, as here, the same terms are used in different statutes that relate to the same subject, the same class of persons, and that treat that class of persons in a similar fashion.

Additionally, it is worth noting that the sections now comprising the PEAA were formerly included under chapter 48, entitled "Employment," along with the minimum wage law, but were transferred to chapter 111, "Professions and Occupations," as part of the revision program of the Illinois Law Revision Commission. (See Ill. Rev. Stat. 1977, ch. 111, disposition table, at 161.) Therefore, the minimum wage law and the PEAA will be treated by this court as *in pari materia*, and the definitions of executive and professional used in the minimum wage law will similarly be used under the PEAA. Enforcement of the PEAA will also be facilitated under such a construction because the State Department of Labor will have a codified definition of these terms with which to work, and does not need to have the matter resolved anew each time a case is brought.

By applying the Federal definitions of the terms executive and professional to the PEAA, we find that the trial court did not err in determining that no genuine issue of fact existed as to whether the senior programmer position was an executive or professional position. The trial court correctly determined that the label executive or professional could not properly be placed on the senior programmer position at Alberto.

■ The final issue presented for review is whether, as a matter of law, judgment should still have been entered for Alberto. This issue focuses on whether TEC may still recover under its contract with Alberto in the absence of an employment agency license. TEC maintains that the PEAA neither declares contracts in violation of it to be void, nor does its language bar any recovery. TEC further maintains that because the act expressly permits nonlicensed agencies, a violation of the licensing provision is not an affront to public policy and does not preclude a recovery by TEC for services rendered.

The only prior relevant case seeking the recovery of fees in the absence of a PEAA license, brought under this statute's predecessor, was *Zinn v. Parrish* (N.D. Ill. 1977), 461 F. Supp. 11, where the agent of a professional football player brought an action against the player to recover commissions allegedly due under their contract. The district court denied the claim because the plaintiff was not licensed pursuant to the statute. In a very terse manner, the court stated: "Defendant's affidavit *** shows that plaintiff was not so licensed during the period of the contracts which he is now attempting to en-

force. This results in an unenforceable and void contract under Illinois law," citing *Tovar v. Paxton Community Memorial Hospital* (1975), 29 Ill. App. 3d 218, 330 N.E.2d 247, and *In re Winston v. Kaspar American State Bank* (1962), 36 Ill. App. 2d 423, 184 N.E.2d 725. (461 F. Supp. 11, 13.) An examination of *Tovar* and *Winston,* however, demonstrates that they are unpersuasive authority for the court's position because in both cases there was either a statute or ordinance explicitly prohibiting the collection of fees by a person who performed services either as a doctor (*Tovar*) or real estate salesman (*Winston*) in the absence of the appropriate license. There is no such explicit provision under the PEAA as it was written when applied in *Zinn,* nor is there such a provision now. Thus, we do not find *Zinn* dispositive of this issue.

In Illinois, generally, a statute which declares an act illegal and which imposes a penalty for its violation renders a contract for the performance of such an act void and unenforceable. (See *Broverman v. City of Taylorville* (1978), 64 Ill. App. 3d 522, 526-27, 381 N.E.2d 373.) Also, "[n]o recovery can be had by either party to a contract the performance of which involves the violation of an existing law." (64 Ill. App. 3d 522, 527.) The PEAA makes it unlawful to place job applicants in nonprofessional and nonexecutive positions without first obtaining a license, and violations of the licensure requirement are Class B misdemeanors. (Ill. Rev. Stat. 1981, ch. 111, par. 904.) We have already determined that TEC did not place the applicant involved here in a professional or executive position. Logic dictates, therefore, that if TEC is not placing persons in professional or executive positions, then it must be considered an employment agency within the terms of the PEAA and must possess a license to act as such. Since TEC placed an applicant in such a nonexempt position, without a license, the contract is void.

TEC argues, however, that because the PEAA does not declare contracts in violation of it to be void, and because the PEAA does not by its terms bar any recovery, it should be allowed to recover from Alberto even in the absence of the license. We find this contention to be without merit.

The PEAA requires all employment agencies to secure a license before operating as such. As stated in relevant part in section 1 of the PEAA:

> "The application for such license shall be filed with the Department of Labor * * *.
> * * *
> Each applicant for a license shall file with the application a

schedule of fees, charges and commissions, which he intends to charge and collect for his services, together with a copy of all forms and contracts to be used in the operation of the agency." (Ill. Rev. Stat. 1981, ch. 111, par. 901.)

That section concludes as follows:

"It shall be unlawful for any employment agency to charge, collect or receive a greater compensation for any service performed by it than is specified in such schedule filed with the Department of Labor. It shall be unlawful for any employment agency to collect or attempt to collect any compensation for any service not specified in the schedule of fees filed with the department." Ill. Rev. Stat. 1981, ch. 111, par. 901.

■■ The plain language of the statute makes it clear that the Department of Labor will not issue a license to a person who does not file a schedule of fees and other necessary documentation when applying for a license. When the schedule is filed and the license issued, no fee can be charged, collected or received in excess of the amount specified in the schedule, or for any service not specified therein. Consequently, we read section 1 of the PEAA as precluding any recovery of fees for services performed in the absence of a properly filed schedule. The fact that TEC may have believed that it was exempt from the licensure requirement, and therefore did not apply for such a license or file a schedule, does not persuade this court otherwise. The PEAA was designed to correct and prevent abusive practices in the area of employment agencies. (See *National Talent Associates, Inc. v. Holland* (1979), 76 Ill. App. 3d 556, 563, 395 N.E.2d 142.) Strict adherence to the requirement of the PEAA is therefore necessary in order that its protective measures are not thwarted. We are mindful of the fact that a strict and literal application of the PEAA in the instant matter may fall harshly upon TEC. That harshness, however, is offset by the need for uniform principles to be applied in future cases.

Accordingly, the failure of TEC to secure the necessary license and file the appropriate schedule precludes it from recovering any fees for services rendered to Alberto in this case. The entry of summary judgment in favor of Alberto was correct and the decision of the trial court is therefore affirmed.

Affirmed.

PERLIN and BILANDIC, JJ., concur.