WATERFORD EXECUTIVE GROUP, LTD., Plaintiff-Appellant, v. CLARK/
BARDES, INC., *et al.*, Defendants-Appellees.

Second District    No. 2—93—0373

Opinion filed April 22, 1994.—Modified on denial of rehearing May 24, 1994.

Hartnett & Hartnett (Patrick I. Hartnett, of counsel) and Stern & Rotheiser (Robert D. Shearer, of counsel), both of Chicago, for appellant.

John D. Lien, of Foley & Lardner, of Chicago (Christopher W. Brownell, of counsel), for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Waterford Executive Group, Ltd. (Waterford), brought an action in the circuit court of Lake County for breach of contract against defendants, Clark/Bardes, Inc., and W.T. Wamberg (collectively referred to as Clark/Bardes). The suit sought compensation for plaintiff's presentation of a job applicant who was subsequently hired by defendants. Defendants filed motions to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) arguing that even if the contract alleged in plaintiff's complaint existed, it was illegal and void under the Private Employment Agency Act (Act) (225 ILCS 515/1 *et seq.* (West 1992)) because plaintiff and its agent, Patrick Atkinson, were not licensed to make such a contract. On January 6, 1993, the trial court granted defendants' section 2—619 motions and dismissed the matter with prejudice after determining, as a matter of law, that plaintiff did not fall within the "management executive recruiting" exception (see 225 ILCS 515/11 (West 1992)) to the licensing requirements of the Act.

On February 3, 1993, the trial court granted plaintiff's motion for leave to file, *instanter*, a "Motion for Rehearing or Reconsideration or Other Relief." Plaintiff's motion argued that the trial court had failed to consider material evidence which had not been available to the court and urged that the trial court's previous order be vacated. On February 5, 1993, an "Amended Motion for Rehearing or Reconsideration or Other Relief" was filed on plaintiff's behalf by Pat Hartnett, who was not an attorney of record in the matter. Defendants moved

to strike both motions, arguing the latter motion had been filed in violation of Supreme Court Rule 137 (134 Ill. 2d R. 137) because it had not been signed by an attorney of record for plaintiff. On February 24, 1993, Hartnett filed a response to defendants' motions to strike to which was appended an undated form entitled "Substitution of Attorney." Later, on March 1, 1993, Hartnett filed a motion for substitution of attorneys on plaintiff's behalf which the trial court granted.

On March 3, 1993, the trial court denied plaintiff's motion for rehearing or reconsideration or other relief. All motions and filings by attorney Hartnett filed prior to his substitution in the case on March 1, 1993, were stricken because they had not been signed by an attorney of record. On March 29, 1993, plaintiff filed a "Motion for Leave to File an Amended Motion for Reconsideration and Response to Defendant's Motion to Strike." The trial court denied plaintiff's motion and this appeal followed.

Plaintiff raises two issues on appeal: (1) whether the trial court erred in determining that plaintiff was not engaged in a "management consulting" or "management executive recruiting" relationship with defendants; and (2) whether the trial court abused its discretion in denying plaintiff's motion for leave to file an amended motion for reconsideration.

Plaintiff's complaint stated, "On or about August 15, 1991, [Julieann Schneidereit (Schneidereit)] authorized [plaintiff] to seek employment or placement in the executive benefits consulting industry. The account representative was Patrick Atkinson." It alleged that on August 19, 1992, Clark/Bardes agreed to compensate plaintiff in an amount equal to 30% of Schneidereit's anticipated salary for her placement of Schneidereit if defendant did choose to offer her employment and she accepted that offer. Plaintiff further alleged that Atkinson called Schneidereit on August 20, 1991, and obtained her permission to send a faxed copy of her resume on plaintiff's letterhead to Clark/Bardes' Chicago office, and Atkinson transmitted the resume to defendants on the following day. Plaintiff's complaint stated that on September 19, 1991, Wamberg instructed Atkinson to send him one copy of Schneidereit's resume and another to John Walker, Clark/Bardes' chief executive officer (CEO), in Dallas, Texas. Atkinson transmitted these resumes on plaintiff's letterhead later that day.

The cover letter which accompanied the faxed resumes provided, in part:

"SERVICE CHARGE: 30% of the Candidate's Annual Estimated First Year Income

1. [Waterford] reserves the right to include a reasonable amount of commissions, bonuses and other cash incentives in addition to base salary when determining a candidate's annual estimated first year income. The candidate's current income and market value will be a strong determining factor.

2. An offer of employment to a referred candidate by a company shall indicate acceptance of this fee schedule.

3. Anyone referring a [Waterford] referred candidate to any other department, affiliated organization or any other company that subsequently employs that candidate shall be held liable for that fee to [Waterford]."

Various telephone calls and meetings occurred between Atkinson, Wamberg, other employees of Clark/Bardes, and Schneidereit. In December 1991, Schneidereit was offered and accepted a position with Clark/Bardes at a base salary of $125,000 and anticipated annual earnings in excess of $300,000.

Defendant filed a section 2—619 motion to dismiss along with several affidavits. Schneidereit's affidavit stated that sometime in mid-August 1991, while she was employed with Corporate Compensation Plans, Inc. (CCPI), Atkinson, an employee of Waterford, contacted her concerning a job opening at Mercer-Meidinger, Inc. (Mercer). This was Schneidereit's first contact with plaintiff or its agents. Schneidereit indicated that she was not interested in Mercer's position, but she would be interested in leaving CCPI for a Chicago or East Coast job in the executive benefits consulting industry. Atkinson told her that he might be able to help, and he subsequently made contacts on her behalf with various companies in the executive benefits consulting industry, including the Management Compensation Group and the Todd Organization.

Affidavits of Wamberg and Walker indicated that late in August 1991 Atkinson telephoned defendant Wamberg seeking employment for Schneidereit. Late in September 1991, Atkinson telephoned Walker, Clark/Bardes' CEO, seeking employment for Schneidereit. Defendants maintained that both of these contacts were initiated by Atkinson and neither was solicited by defendants. Defendants characterize Atkinson's contacts as attempts to secure employment on behalf of Schneidereit and note that Atkinson contacted other companies besides Clark/Bardes on her behalf. Defendants deny that there was ever any agreement, written or oral, between themselves and plaintiff whereby plaintiff was retained to identify, appraise, or recommend a job applicant for defendants.

In its reply to defendants' section 2—619 motion, plaintiff stated that "during the times indicated, pursuant to the agreement with the Defendant, wherein the Defendant sought individuals for a certain position, and retained the Plaintiff to fill this position, and agreed to pay the fee to the Plaintiff, the Plaintiff undertook to find a qualified applicant, including but not limited to [Schneidereit]." Plaintiff then went on to deny that it had a contract with Schneidereit, claiming instead that the "account was solely with the Defendant." Plaintiff also claimed that at the time Atkinson contacted Schneidereit, "the Plaintiff was already aware of a job opening with Defendants *** since the Plaintiff had already entered into an agreement with the Defendant to be retained by the Defendant, and to act solely on behalf of the Defendant, to find a qualified applicant for the Defendant, for an agreed fee."

In support of its contentions, plaintiff attached the affidavit of Patrick Atkinson. Atkinson's affidavit admitted that he contacted Schneidereit but failed to specify when this occurred. Atkinson averred that he entered into an oral agreement with defendants to fill the subject position in August 1991, but made no reference to whether this occurred before or after his initial contact with Schneidereit. Atkinson did aver "[t]hat subsequent to the initial contact and agreement with the defendants, wherein the defendants retained [plaintiff] *** I solicited numerous applicants in my files, in my office *** including [Schneidereit]."

It was undisputed that neither plaintiff nor Atkinson held a license under the Act to act, respectively, as an employment agency or employment counsellor. Regarding Schneidereit's introduction to other potential employers, plaintiff filed affidavits averring that it was usual and customary for plaintiff, and those in the industry, to retain a pool of applicants to draw upon in attempting to fill a job position and that it was normal and customary within their industry, when trying to place a job candidate into a specific company for a specific opening, to contact similar companies to seek out other similar job openings to increase the visibility of the candidate and enhance the possibility of placement. These affidavits also averred that, in the industry, a nonlicensed contingency search firm is due a placement fee from the hiring company if and when a candidate that has been presented to them is hired regardless of whether the firm "was actively recruiting on a 'sanctioned' search or simply presenting a job candidate to a potential hiring company on an opportunistic basis."

At a hearing on defendants' motions, plaintiff's counsel argued that the phrase "acts solely on behalf of *** an employer" contained

in the exception to the Act's definition of an "employment agency" precluded plaintiff from acting on behalf of the job applicant, but placed no restriction on plaintiff's ability to act on behalf of more than one employer with respect to the same job applicant. After the trial court expressed disagreement with this assertion, plaintiff's counsel argued that defendants had failed to introduce any evidence that plaintiff referred Schneidereit to other employers after she had been referred to defendants. The trial court then inquired whether plaintiff felt the timing of the referrals of the job applicant to the various employers was a factual issue in the case. Plaintiff's counsel responded that the issue was irrelevant, and the trial court stated that it would consider counsel's statement as a judicial admission, binding on plaintiff, that there was no genuine issue of material fact with respect to defendants' section 2—619 motions.

The trial court found that plaintiff and its agent were not licensed under the Act; that based upon the pleadings, motions, affidavits and admissions of counsel in open court, there was no issue of material fact with respect to defendants' section 2—619 motions; and that, as a matter of law, plaintiff did not act solely on behalf of defendants as required to meet the exemption to the definition of an "employment agency" under the Act.

■ Section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)) provides for the dismissal of a complaint when the underlying claim is barred by an affirmative matter. An affirmative matter includes something in the nature of a defense that completely negates the alleged cause of action. (*Meyers v. Rockford Systems, Inc.* (1993), 254 Ill. App. 3d 56, 61.) For purposes of resolving a motion under section 2—619, all well-pleaded facts in the complaint are taken as true as well as the reasonable inferences to be drawn from those facts. (*Employers Mutual Cos. v. Skilling* (1994), 256 Ill. App. 3d 567, 569; *Pechan v. Dynapro, Inc.* (1993), 251 Ill. App. 3d 1072, 1083-84.) Where the grounds for dismissal do not appear on the face of the pleadings, the section 2—619 motion should be supported by affidavits. *Pechan*, 251 Ill. App. 3d at 1083.

A section 2—619 motion should be granted by the trial court if, after construing the documents supporting the motion in the light most favorable to the opposing party, it finds no disputed issues of fact (*Meyers*, 254 Ill. App. 3d at 61) and concludes that the affirmative matter negates the plaintiff's cause of action completely or refutes critical conclusions of law or conclusions of material, unsupported fact (*Employers Mutual*, 256 Ill. App. 3d at 569). A trial court may not consider arguments and matters unsupported by affidavit. (See *Franzen-Peters, Inc. v. Barber-Greene Co.* (1987), 155 Ill. App. 3d 957,

961.) A reviewing court's consideration of a dismissal pursuant to a section 2—619 motion is limited to consideration of the legal questions presented by the pleadings, but such review is independent and need not defer to the trial court's reasoning. *Employers Mutual,* 256 Ill. App. 3d at 569.

It was undisputed that plaintiff was not licensed to do business as an employment agency under the provisions of the Act. Plaintiff concedes that an unlicensed employment agency is prohibited from recovering a fee for the placing of a job applicant with an employer. (See *Management Recruiters of O'Hare, Inc. v. Process & Environmental Equipment Unlimited, Inc.* (1985), 137 Ill. App. 3d 513, 521; *T.E.C. & Associates, Inc. v. Alberto-Culver Co.* (1985), 131 Ill. App. 3d 1085, 1095-96.) The central inquiry of defendants' section 2—619 motion, therefore, was whether the plaintiff was operating as an "employment agency" within the context of the Act.

■ Section 11 of the Act provides, in part:

"The term 'employment agency' means any person engaged for gain or profit in the business of securing or attempting to secure employment for persons seeking employment or employees for employers. However, the term 'employment agency' shall not include any person engaged in the business of management consulting or management executive recruiting, and who in the course of such business *is retained by, acts solely on behalf of, and is compensated solely by, an employer* to identify, appraise or recommend an individual or individuals for consideration for an executive or professional position, provided that: (a) the compensation for each such position is at the rate of not less than $15,000 per year; and (b) in no instance is the individual who is identified, appraised or recommended for consideration for such position charged a fee directly or indirectly in connection with such identification, appraisal or recommendation, or for preparation of any resume, or on account of any other personal service performed by the person engaged in the business of management consulting or management executive recruiting." (Emphasis added.) 225 ILCS 515/11 (West 1992).

It is plaintiff's position that its activity in arranging Schneidereit's employment with defendants falls within the "management executive recruiting" exception to the licensing requirements of the Act.

■ Plaintiff argues that a recruiting firm is not disqualified from the management executive recruiting exception merely because it circulated an applicant's resume to employers other than the one who ultimately hired the applicant. Plaintiff urges that the terms "act solely on behalf of *** an employer" should be interpreted in light of the custom and usage within the recruiting industry to mean

agencies that are retained by and paid by employers, as a class, rather than by applicants.

Where legislative terms have neither been defined by statute nor judicially interpreted, a court is guided by both the plain meaning of the statute and the legislative intent. (*Harris Bank v. Village of Mettawa* (1993), 243 Ill. App. 3d 103, 116.) The primary rule in statutory construction, to which all other rules are subordinate, is to determine and give effect to the true intent of the legislature. (*Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.* (1993), 247 Ill. App. 3d 1015, 1020.) To determine legislative intent, statutory language is examined as a whole, and each part is considered in connection with every other part. (*Harris Bank*, 243 Ill. App. 3d at 116.) Where the language is clear, it should be given effect without resorting to other aids for construction. *Graunke*, 247 Ill. App. 3d at 1020.

We agree with the trial court that the pertinent language of section 11 is clear on its face. It provides for a very limited exception to the strict licensing requirements of the Act only where the management executive recruiting firm is acting solely on behalf of, and is compensated solely by, an employer. This exception is limited to situations where the recruiting firm is acting as an agent for the hiring employer and not as an independent third party to negotiations between an applicant and one or more potential employers. The recruiting firm must also be compensated solely by the employer, thereby placing the employer in a position to safeguard itself from abuses by its chosen recruiter. If a recruiter were allowed to work for a group of employers with respect to a single applicant, this safeguard would be lost and problems of conflict of interest would arise.

Under the analysis urged by plaintiff, a recruiter could play employers against one another, driving up the price paid for the applicant and increasing the commission realized by the recruiting firm. The recruiter could also hold back the most qualified candidates in the "applicant pool" and disclose them to only the highest paying employers. These situations demonstrate how the recruiting firm lacks responsibility to any single employer. The fiduciary obligation which exists when a recruiting firm is acting solely on behalf of, and is being compensated solely by, a single employer in a particular transaction provides the safeguard which vitiates the legislative concerns underlying the Act. Contrary to the conclusory statements in plaintiff's affidavits, the legislature has prohibited recovery of a fee by an unlicensed contingency search firm which operates merely to present job candidates to potential hiring companies on an opportunistic basis.

In the present case, the undisputed and well-pleaded facts estab-

lish that there was no agency relationship between plaintiff and defendants. Plaintiff was circulating Schneidereit's resume to several employers other than defendants in the executive benefits consulting industry. In fact, plaintiff's own complaint, while alleging that there may have been a contract reached with defendants, stated that some form of "account" was created regarding a search for employment on behalf of Schneidereit at least four days earlier. It was also undisputed that defendants were contacted by plaintiff, not vice versa. Plaintiff did not deny these facts in its affidavits or complaint, but asserted that a contract was reached with defendants during communications on August 19, 1991, regardless of who had initiated the discussions. Because we determine, as did the trial court, that plaintiff was not acting solely on defendants' behalf, plaintiff did not qualify for the limited exception to the licensing requirements of the Act. Dismissal was, therefore, correctly granted under section 2—619 because any contract which may have existed between plaintiff and defendants was rendered void and unenforceable by the provisions of the Act.

It is our view that it would be inappropriate to allow custom and usage within the recruitment industry to define the terms of section 11. The Act was designed to correct and prevent abusive practices by employment agencies. (*T.E.C.*, 131 Ill. App. 3d at 1096.) It would be ill-advised, therefore, to allow the customs of the very industry the legislature sought to control to define or limit the regulatory legislation. We agree with the court in *T.E.C.* that strict adherence to the terms of the Act is necessary to prevent its protective measures from being thwarted. Although the present result of a strict and literal application of the Act may be harsh, this harshness must be balanced against the need for uniformity of application in future cases. *T.E.C.*, 131 Ill. App. 3d at 1096.

We recognize that plaintiff contended that it did not initiate the contacts with defendants, did not have any kind of "account" with Schneidereit, did not work on behalf of anyone other than defendants, and argued that Atkinson knew of the job opening with defendants prior to his initial contact with Schneidereit. Some of these points, however, were presented only through arguments of counsel unsupported by specific statements by affidavit, while others were contrary to the plain language of plaintiff's complaint. Because the arguments were neither "well pleaded" nor supported by affidavit, they were unworthy of consideration by the trial court. See *Franzen-Peters*, 155 Ill. App. 3d at 961.

The second question raised by plaintiff is whether the trial court erred in denying substituted counsel's motion for leave to file an

amended motion for reconsideration with supporting exhibits. Plaintiff characterizes this question as analogous to the question of the filing of "tardy" pleadings under Supreme Court Rule 183. (134 Ill. 2d R. 183.) Citing *McGrath Heating & Air Conditioning Co. v. Gustafson* (1976), 38 Ill. App. 3d 465, plaintiff contends that it is error to deny a motion for late filing unless the opposing party can demonstrate prejudice.

■ Plaintiff mischaracterizes both the nature of the subject motion and the standard for granting a Rule 183 extension. Rule 183 provides that a court, "for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." (134 Ill. 2d R. 183.) The record reflects that the trial court denied plaintiff's motion for rehearing or reconsideration or other relief nearly a month before the motion for leave to amend was filed by successor counsel. The motion should, therefore, have been characterized as a motion for leave to file a *second* motion for rehearing or reconsideration or other relief. Plaintiff provides this court with no authority that there is a right to be heard on such a motion.

Also, the burden does not fall on the opposing party to show that a Rule 183 motion should not be granted. Rather, the movant must demonstrate that there is "good cause" for allowing the extension. (134 Ill. 2d R. 183.) The grant or denial of a motion for extension falls within the sound discretion of the trial court. (*Olympic Federal v. Witney Development Co.* (1983), 113 Ill. App. 3d 981, 988.) Inadvertence, mistake, or absence of prejudice to the opposing party or inconvenience to the trial court does not constitute "good cause." *Greene v. City of Chicago* (1976), 48 Ill. App. 3d 502, 513, *aff'd* (1978), 73 Ill. 2d 100.

The trial court acted correctly in striking plaintiff's successor counsel's amended motion filed prior to his entering an appearance. Defendants' motion to strike effectively placed plaintiff's counsel on notice of the problem, which counsel subsequently remedied by filing a motion for substitution of counsel. Despite plaintiff's counsel's ability to file a motion for leave to amend the pending motion prior to the hearing, thereby seeking to correct the problem of his premature filings, he took no such action. Thus, plaintiff's motion would not have been appropriately granted even if it had been properly brought under Rule 183.

The trial court correctly concluded that plaintiff's motion was neither procedurally nor substantively sound. We conclude that the trial court did not abuse its discretion in denying plaintiff's motion

for leave to file an amended motion for rehearing or reconsideration or other relief.

■ Defendants have filed a motion pursuant to Supreme Court Rule 361 (134 Ill. 2d R. 361) to strike portions of plaintiff's reply brief which purportedly raise matters neither pleaded nor argued in the trial court or in plaintiff's amended appellant brief. We agree with defendants that plaintiff raises several points in its reply brief which are not properly before this court. We have previously identified the relevant facts which were well pleaded or supported by affidavit, and the issues raised by plaintiff are resolved solely upon those facts. It is unnecessary, therefore, to strike portions of the reply brief.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

COLWELL and PECCARELLI, JJ., concur.