First Division

November 8, 2004 

No. 1-03-1975

RANDALL S. ANDERSON,

Plaintiff-Appellee,

v.

FIRST AMERICAN GROUP OF COMPANIES, INC., and ASIF SAYEED,

Defendants-Appellants.

)

)

)

)

)

)

)

)

))

Appeal from 

the Circuit Court 

of Cook County

00 M 1125909

Honorable 

Ronald S. Davis

Judge Presiding

JUSTICE McBRIDE delivered the modified opinion of the court upon denial of rehearing:

Defendants, First American Group of Companies, Inc. (First American), and Asif Sayeed, appeal the trial court’s finding that plaintiff, Randall S. Anderson, qualified as an “employee” under section 2 of the Illinois Wage Payment and Collection Act (Wage Act) (
820 ILCS 115/1 through 15 (West 2000)), and therefore, plaintiff was entitled to severance compensation as provided in plaintiff’s employment contract as well as attorney fees.  Defendants argue that plaintiff’s position as vice president of operations for First American is not an “employee” within the meaning of section 2 (820 ILCS 115/2 (West 2000)).  Defendants also contend that plaintiff is not an “employee” under section 1 of the Attorneys Fees in Wage Actions Act (Fee Act) (705 ILCS 225/0.01 through 1 (West 2000)) or, in the alternative, plaintiff failed to comply with the Fee Act and is not entitled to an award of attorney fees.

The following evidence was admitted at the May 2003 bench trial.

First American is a holding company for two subsidiaries: American Health Care Provider Plan, Inc. (AHCP), and American Unified Life and Health Company, Inc. (AULH).  AHCP was a health maintenance organization (HMO) and AULH was a preferred provider organization (PPO).  First American operates in Illinois, Indiana and Arkansas. 

In 1999, First American was in the process of acquiring another HMO, Maxicare.  Plaintiff was employed with Maxicare at that time, but became aware of First American during the acquisition.  Plaintiff began to speak and interview with Asif Sayeed and other senior executives at First American about future employment with that company.  On February 15, 1999, plaintiff accepted an offer of employment with First American and began work on March 15, 1999, as the vice president of operations.

Plaintiff signed an employment contract with First American.  The employment contract provided plaintiff with a salary of $160,000 to be paid biweekly.  The contract also allowed relocation expenses for plaintiff in the amount of $16,000 for plaintiff to move from California to Illinois.  A separate letter raised the relocation expense reimbursement from $16,000 to $20,000. As for termination, the contract stated that if plaintiff is terminated for cause, then First American is under no further obligation.  However, if plaintiff is terminated without cause, then First American shall continue to pay plaintiff “an amount equal to fifty percent” of plaintiff’s annual base salary in effect on the effective date of termination for a period of six months.  The contract was signed by plaintiff and Elizabeth Stolkowski, First American’s vice president and chief operating officer.

Once plaintiff began work, the following chain of command was in effect: plaintiff reported to Stolkowski, who reported to Daniel Splain, First American’s senior vice president, who reported to Sayeed, First American’s president and chief executive officer.  Sayeed also served as the owner and one of the directors for First American.  

Plaintiff’s responsibilities at First American included overseeing claims, customer service, enrollment, and account management for AHCP.  Plaintiff was later placed in charge of information technology.  Plaintiff oversaw several employees, and the directors for operations, enrollment and information technology.  He also hired a deputy to his position and an operations person to assist in Medicare operations.  Plaintiff also had the authority to hire consultants for First American.  Dr. Nalani Thakrar also oversaw the payment of claims.  Plaintiff was not an officer or director of First American.  Plaintiff needed approval from Sayeed before making any significant changes in company policy or processes.  Sayeed also had to approve plaintiff’s expense reimbursement requests.

In the summer and fall of 1999, First American began to struggle and became the subject of an audit by the Illinois Department of Insurance.  The Department of Insurance retained American Insurance Management (AIM) to perform the audit of First American.  The Office of the Special Deputy (OSD) of the Department of Insurance moved into First American and began handling financial operations of AHCP and AULH.  During this time of First American’s instability, plaintiff began to consider investing in the purchase of another HMO.  Eventually, in the fall of 1999, plaintiff invested in the purchase of Emerald HMO, later renamed Renaissance.  Renaissance operated in Ohio.  Plaintiff participated in this purchase with Stolkowski, Splain, and other former First American executives.  Plaintiff was listed as the senior vice president of Renaissance in its licensure filings in the State of Ohio.  Plaintiff remained employed at First American while the purchase of Renaissance took place, but stated that he did not work for Renaissance until after he was terminated and did not perform work for Renaissance on First American’s time.

Around the end of March 2000, Sayeed discovered plaintiff’s involvement in the Renaissance acquisition, but he did not confront plaintiff with that information.  On March 31, 2000, Sayeed fired plaintiff, stating that plaintiff was not a team player and was not performing his job.  Plaintiff had not received any negative performance reviews prior to his termination.  Plaintiff made a demand through his attorneys for severance under his employment contract and for relocation expenses, which included rent payments of $900 per month.  First American denied plaintiff’s demand.

Following the trial, the trial court ruled in favor of plaintiff, finding that plaintiff was an “employee” under the Wage Act and that plaintiff was terminated without cause.  The trial court awarded plaintiff $6,666.67 in severance and $4,050.88 in relocation expenses.  The trial court rejected plaintiff’s claim for reimbursement for rent.  The trial court also ruled that plaintiff was entitled to attorney fees and entered an order granting plaintiff $34,495 in attorney fees and $2,835.92 in costs.  Defendants raise two issues on appeal.

The first question for this court to consider is whether plaintiff is an “employee” under section 2 of the Wage Act.  Defendants maintain that this issue raises a mixed question of law and fact and is subject to a clearly erroneous standard of review.  Plaintiff disagrees and asserts that the trial court’s decision that plaintiff is an “employee” under the Wage Act is reviewed to determine if it was against the manifest weight of the evidence.

We agree with defendants.  A mixed question of law and fact is one involving an examination of the legal effect of a given set of facts.  
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 391 (2001).  Stated another way, a mixed question is one in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or whether the rule of law as applied to the established facts is or is not violated.  
AFM Messenger
, 198 Ill. 2d at 391.  Here, the question as to whether plaintiff qualifies as an “employee” under the Wage Act presents a mixed question of law and fact.  Our analysis is partially factual because we must consider whether plaintiff’s position with First American falls within the definition of “employee” in section 2.  However, we also face a legal question in interpreting section 2.

The clearly erroneous standard of review lies between the manifest weight of the evidence standard and the 
de novo
 standard, and as such, it grants some deference to the trial court’s decision.  
AFM Messenger
, 198 Ill. 2d at 392.  When faced with a mixed question of law and fact, the trial court’s decision will be deemed “clearly erroneous” only where the reviewing court, on the entire record, is “ ‘left with the definite and firm conviction that a mistake has been committed.’ ”  
AFM Messenger
, 198 Ill. 2d at 395, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).  Nonetheless, that the clearly erroneous standard is largely deferential does not mean, however, that a reviewing court must blindly defer to the trial court's decision.  
AFM Messenger
, 198 Ill. 2d at 395.

Section 2 of the Wage Act provides, in relevant part:

“As used in this Act, the term ‘employee’ shall include any individual permitted to work by an employer in an occupation, but shall not include any individual:

(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and

(2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and

(3) who is in an independently established trade, occupation, profession or business.”  820 ILCS 115/2 (West 2000).

Defendants contend that plaintiff’s position as an executive employee at First American removes him from section 2's coverage.  Defendants base this assertion on their construction of the Wage Act.  Defendants cite to section 2(1) and argue that plaintiff’s work placed him “free from control and direction over the performance of his work.”  Defendants do not contend that plaintiff fulfills section 2(2) or (3), but maintain that the statute is to be read in the disjunctive.  Under defendants’ interpretation, one must only meet one prong for the exclusion in section 2 to take effect.  Plaintiff counters that the plain language of the section indicates that section 2 is to be read in the conjunctive because of the use of word “and” connecting the exclusionary prongs.  Plaintiff maintains that all three factors must be met in order for the exclusion to apply.

We agree with plaintiff’s interpretation.  The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature.  
People v. Maggette
, 195 Ill. 2d 336, 348 (2001).  In determining the legislature's intent, a court should first consider the statutory language; this is the best means of determining the legislative intent.  
Maggette
, 195 Ill. 2d at 348.  A court must consider the entire statute and interpret each of its relevant parts together.  
Paris v. Feder
, 179 Ill. 2d 173, 177 (1997).  If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids.  
Paris
, 179 Ill. 2d at 177. 

Section 2 is drafted in the conjunctive.  Generally, principles of statutory construction interpret the term “and” as conjunctive rather than disjunctive.  
City of Carbondale v. Bower
, 332 Ill. App. 3d 928, 933 (2002); see also 
AFM Messenger
, 198 Ill. 2d at 397 (reading section 212 of the Unemployment Insurance Act (820 ILCS 405/212 (West 2000)) as conjunctive).  The word “and” joins section 2(1), (2), and (3), which indicates the legislative intent for all three prongs to be met in order to fall within the statutory exclusion in the Wage Act’s definition of “employee.”

The Illinois Supreme Court’s construction of section 212 of the Unemployment Insurance Act in 
AFM Messenger
 provides support for this conclusion.  Section 212 provides:

“Service performed by an individual for an employing unit, whether or not such individual employs others in connection with the performance of such services, shall be deemed to be employment unless and until it is proven in any proceeding where such issue is involved that--

A. Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

B. Such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

C. Such individual is engaged in an independently established trade, occupation, profession, or business.” 820 ILCS 405/212 (West 2000). 

The supreme court considered this similarly worded exclusion and reasoned that “[b]ecause the three conditions of section 212 are phrased in the conjunctive, all three conditions must be satisfied for the independent-contractor exemption to apply.” 
AFM Messenger
, 198 Ill. 2d at 397.  This interpretation by the supreme court supports our determination that section 2 is to be read in the conjunctive with all factors to be met before the exclusion applies.  See also 
Adams v. Catrambone
, 359 F.3d 858, 864-65 (7th Cir. 
2004).

The Illinois Administrative Code (Code) also aids our analysis.  Section 300.460 of Title 56 regulates section 2 of the Wage Act and further defines its exclusion.  Section 300.460 states:

“Independent Contractor Exemption

a) 
All three conditions enumerated in Section 2 of the Act must be satisfied for the independent contractor exemption to apply
.  For purposes of Section 2 of the Act:

1) ‘Control’ means the existence of general control or right to general control, even though the details of work are left to an individual's judgment.

2) ‘An independently established trade, occupation, profession or business’ means the individual performing the services has a proprietary interest in such business, to the extent that he/she operates the business without hindrance from any other person and, as the enterprise's owner, may sell or otherwise transfer the business.

b) An individual may be an employee without being entirely dependent upon his/her relationship with a specified employer for his/her livelihood.  A person engaged in other occupations may be an employee of a specified employer even though he/she only worked intermittently or part time.

c) In determining whether this exemption applies, the Department shall consider the actual, rather than the alleged, relationship between an employer and a claimant; designations and terminology used by the parties are not controlling nor is the claimant's status for tax purposes controlling.”  (Emphasis added.) 56 Ill. Admin. Code §300.460 (2004).

We point out that the title of this section is the “Independent Contractor Exemption,” which shows the exemption in section 2 is intended to exclude independent contractors from the definition of “employee.”  Moreover, the first sentence of the regulations directly states that all three conditions must be satisfied before the exclusion of section 2 applies.  This language confirms our determination that section 2 of the Wage Act is to be read in the conjunctive in order to take effect.

Based on this construction of section 2, plaintiff does not meet the statutory definition for the exemption if he fails to satisfy any of the three conditions. We need not consider all conditions; rather, we need to determine that plaintiff fails to satisfy only one condition.  Plaintiff’s position as vice president of operations fails to satisfy the third condition.  Plaintiff’s duties did not place his performance outside of the usual course of business.  Plaintiff did not possess any proprietary interest in First American and was not an owner.  Because plaintiff does not satisfy all three conditions in section 2, he does not fall within its exemption.

We are aware of 
Doherty v. Kahn
, 289 Ill. App. 3d 544 (1997), where the plaintiff was found to fall outside the definition of “employee,” but find that it is distinguishable on its facts.  In 
Doherty
, the plaintiff merged his landscaping business with two new partners, and as part of the arrangement, the plaintiff became president of the new business and was responsible for client development, sales and operations.  
Doherty
, 289 Ill. App. 3d at 549.  The plaintiff also retained a 65% share in ownership of the company.  
Doherty
, 289 Ill. App. 3d at 549.  These facts show that the plaintiff possessed a proprietary interest in the business as well as freedom from control and direction in his operations.  In the case at bar, plaintiff did not possess any ownership shares of First American and did not operate outside of the control and direction of more senior executives.

Next, defendants claim that plaintiff’s position as an executive with First American excludes him from the definition of “employee” in section 2.  Defendants base this argument on other sections of the Wage Act in which executive employees are specifically discussed.  Defendants urge this court to read these provisions with section 2 to find that the legislature intended to exclude executive employees from the definition of “employee.”  This argument is unpersuasive.

The language in section 2 does not make any designation that “executive employee” is to be defined differently from an “employee.”  Defendants wish to imply such an exception from other provisions in the Wage Act, but the plain language of section 2 does not support this reading. A court must not construe a statute to add exceptions or limitations or change the law set forth in the statute so as to depart from the statute's plain meaning.  
Poullette v. Silverstein
, 328 Ill. App. 3d 791, 794 (2002).  We decline to read section 2 in such a manner as advocated by defendants.

Likewise, we are not persuaded by defendants’ reliance on 
T.E.C. & Associates, Inc. v. Alberto-Culver Co.
, 131 Ill. App. 3d 1085 (1985).  The decision in 
T.E.C. & Associates
 is not relevant to the issue in this case.  In 
T.E.C. & Associates
, the question before the court was whether a senior programmer position was an executive or professional position under the Private Employment Agencies Act (Ill. Rev. Stat. 1981, ch. 11, par. 914).  
T.E.C. & Associates
, 131 Ill. App. 3d at 1091.  However, the statute at issue specifically exempted employment agencies from its licensing requirements if the agency engaged in the recruitment of executive or professional positions.  Ill. Rev. Stat. 1981, ch. 111, par. 914; 
T.E.C. & Associates
, 131 Ill. App. 3d at 1091-92.  Here, as previously discussed, section 2 does not make an reference to executive employees, and therefore, defendants’ reliance on 
T.E.C. & Associates
 is misplaced.

Based on this analysis, we believe the circuit court’s finding that plaintiff was an “employee” within the definition of section 2 was correct, and accordingly, plaintiff was entitled to receive 50% of his monthly salary, as provided in his employment contract with First American as well as his relocation expenses, as determined by the circuit court.

Defendants also contend that plaintiff was not entitled to recover attorney fees: (1) because plaintiff is not an employee under the Fee Act; or (2) in the alternative, plaintiff failed to comply with the Fee Act, and the award is barred.  Defendants continue to assert that plaintiff does not fall within the protection of section 1 of the Fee Act (705 ILCS 225/1 (West 2000)) because of his position as an executive employee.

Section 1 of the Fee Act provides:

“Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action.”  705 ILCS 225/1 (West 2000).

There is no common law principle in Illinois allowing attorney fees, either as costs or damages.  
Caruso v. Board of Trustees
,  129 Ill. App. 3d 1083, 1087 (1984).  As such, we must consider this statute to be in derogation of the common law, and it is to be strictly construed.  
Caruso
, 129 Ill. App. 3d at 1087.  
The cardinal rule of statutory interpretation, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature.  
Maggette
, 195 Ill. 2d at 348.  In determining the legislature's intent, a court should first consider the statutory language; this is the best means of determining the legislative intent.  
Maggette
, 195 Ill. 2d at 348.

 Defendants cite several old cases that implicitly held that a plaintiff seeking to recovery attorney fees under the Fee Act had to show that he was a member of the class of people the Fee Act was designed to protect.  See 
World’s Columbian Exposition v. Thompson
, 57 Ill. App. 606 (1894); 
Buren v. Mercury Press, Inc.
, 280 Ill. App. 217 (1935).  However, more recently, the Fourth District in 
Reiss v. El Bauer Chevorlet Co.
, 96 Ill. App. 2d 266, 271 (1968), when considering section 1, as amended to include “or employee,” held that “[t]he obvious legislative intent was to include all employees who must sue to obtain payment of their wages and who otherwise comply with the requirements of the statute.”

The First District in 
Lites v. Jackson
, 70 Ill. App. 3d 374, 376-77 (1979), construed the statute strictly, holding that the word “employee” in section 1 should be used in its limited and restrictive sense and must mean all persons hired to render services of the same general nature as mechanic, artisan, miner, laborer and servant.  The 
Lites
 court went on to find that an elected official of a village did not fall within the listed employments.  
Lites
, 70 Ill. App. 3d at 377.

Decisions after 
Lites
 have found that independent contractors are not employees under the Fee Act (
Howard A. Koop & Associates v. KPK Corp.
, 119 Ill. App. 3d 391, 406 (1983)), but that salesmen (
Johnson v. Figgie International, Inc., Rawlings Sporting Goods Division
, 151 Ill. App. 3d 496, 508-09 (1986)) and associate attorneys (
Shramuk v. Snyder
, 278 Ill. App. 3d 745, 750-51 (1996)) are.  In addition, we note several cases have applied the Fee Act to a physician, a company vice president, a police officer and a manager without considering whether the plaintiff qualified as an employee, but denied the fees on other grounds.  See 
Caruso
, 129 Ill. App. 3d at 1087-88; 
Cress v. Recreation Services, Inc.
, 341 Ill. App. 3d 149, 197-98 (2003); 
Swanson v. Village of Lake in the Hills
, 233 Ill. App. 3d 58, 67-68 (1992); 
Kemnetz v. Elliott Farmers Grain Co.
, 136 Ill. App. 3d 226, 231 (1985).

We believe that plaintiff qualifies as an “employee” under the Fee Act.  We agree with 
Reiss
’s holding that the legislative intent behind the inclusion of “employee” in the Fee Act was to include all employees who bring actions to recover lost wages.  Here, plaintiff clearly was an employee of First American, and as plaintiff points out, like section 2 of the Wage Act, the statute makes no distinction as to the exclusion of an executive employee.  We reject defendants’ additional contention to consider an executive employee differently from an employee under the Fee Act when the statutory language does not provide for such a consideration. 

However, in order to recover under the Fee Act, a plaintiff must strictly comply with its provisions.  Defendants also argue that plaintiff failed to comply with the Fee Act and is barred from an award of attorney fees.  Defendants assert that plaintiff cannot recover because his written demand exceeded the amount the trial court found due and owing.

Here, plaintiff requested severance pay under his employment contract in the amount of $6,666.67, a reimbursement of business expenses for $904.02, and reimbursement for relocation expenses for $15,750.88.  Plaintiff’s total written demand equaled $23,321.57.  The trial court found plaintiff was owed: $6,666.67 according to plaintiff’s employment contract and $4,050.88 in relocation expenses.  The trial court specifically noted that rent on plaintiff’s apartment was not within the meaning of “relocation expenses.”  The total of plaintiff’s award was $10,717.55, which is $12,604.02 less than plaintiff’s written demand.

Defendants maintain that the statutory language requiring a written demand “for a sum not exceeding the amount so found due and owing” is clear and unambiguous, and therefore, when the trial court found an amount due and owing that was less than plaintiff’s demand, he was unable to recover attorney fees under the Fee Act.  In response, plaintiff contends that this court should consider his claim for wages separate from his reimbursement requests.  Under this argument, plaintiff asserts that the trial court awarded the exact amount of his wage request, and his demand did not exceed the amount found due and owing.

The Wage Act defines “wages” as:

“any compensation owed an employee by an employer pursuant to an employment contract or agreement between the [two] parties, whether the amount is determined on a time, task, piece, or any other basis of calculation.  Payments to separated employees shall be termed ‘final compensation’ and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and 
any other compensation owed
 the employee by the employer pursuant to an employment contract or agreement between the [two] parties.”  (Emphasis added.)  820 ILCS 115/2 (West 2000).

Reimbursements for relocation expenses properly fit within the category of “any other compensation owed” under section 2.   As plaintiff argued to the trial court, relocation expenses are included with wages as a violation of the Wage Act.  In order to make such an argument, these reimbursements were considered wages under the Wage Act.  Just because plaintiff delineated different subtotals for wages and reimbursements for relocation expenses did not make them separate demands.  Plaintiff demanded wages and reimbursements as violations of the Wage Act in the trial court.  Plaintiff cannot assert otherwise on appeal.  

We find that the statutory language plainly states that in order to recover attorney fees, a plaintiff must make a demand for a sum that does not exceed the amount found due and owing by the trial court.  Here, plaintiff’s demand was more than twice the amount the trial court found due and owing, and accordingly, under section 1 of the Fee Act, plaintiff is not entitled to attorney fees.  See 
Caruso
, 129 Ill. App. 3d at 1088 (no attorney fees recovered where sum demanded exceeds amount found due and owing); 
Kemnetz
, 136 Ill. App. 3d at 231 (attorney fees properly denied when demand “far exceeded amount found ‘due and owing’ ”).

In his petition for rehearing, plaintiff claims for the first time that it is unclear whether the trial court based its award for relocation expenses on plaintiff’s Wage Act claim or his breach of contract claim.  Under Supreme Court Rule 341(e)(7), points not argued in the brief on appeal are waived and cannot be raised in a petition for rehearing.  188 Ill. 2d 341(e)(7).  Plaintiff’s contention is, therefore, waived.  However, even if this court were to consider this point, plaintiff’s argument is unpersuasive.  The terms of plaintiff’s employment contract classified “relocation expenses” as part of plaintiff’s compensation package.  The Wage Act includes “any other compensation owed” as part of an employment contract within the statutory definition of “wages.”  It properly follows that plaintiff’s relocation expenses were part of the compensation owed under his employment contract and the Wage Act.        

For the foregoing reasons, we affirm the decision of the circuit court of Cook County that plaintiff is entitled to the sum of $10,717.55, and we reverse the circuit court of Cook County’s award of attorney fees.

Affirmed in part, and reversed in part.

CAHILL, P.J. and O’MALLEY, J., concur.