NOTICE
Decision filed 08/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240271-U

NO. 5-24-0271

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ESTATE OF HERBERT BOEY III, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Constance D. White, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23-PR-149 |
| | ) | |
| Karzell D. Boey, | ) | Honorable |
| | ) | Thomas B. Cannady, |
| Respondent-Appellee). | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's order finding respondent to be the natural son and sole heir at law of the decedent where petitioner admitted to the authenticity of the genetic testing.

¶ 2    This matter arises out of probate proceedings regarding the estate of Herbert Boey III. Petitioner Constance D. White, the half-sister of decedent, appeals *pro se* the circuit court's order granting respondent Karzell D. Boey's motions for summary judgment and judgment on the pleadings, in which it found Karzell was the natural son and heir of Herbert Boey III. Karzell moved to dismiss the appeal, arguing this court lacks jurisdiction because the order from which Constance appeals is not a final and appealable judgment. He further contends that Constance lacks standing because she is neither the administrator of the estate nor a real party of interest in the

1

circuit court's determination of Karzell's heirship. We took the motion to dismiss with the case. For the reasons explained below, we deny the motion to dismiss and affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4    In the underlying probate matter, Herbert Boey III died intestate on April 10, 2023. Constance, decedent's half-sister, filed a petition for letters of independent administration of his estate on April 13, 2023. On April 18, 2023, Karzell also filed an amended petition for letters of administration, claiming he was the son and sole heir of decedent. On May 2, 2023, over Karzell's objection, the circuit court entered an order appointing Constance as the administrator of Herbert Boey III's estate and required "supervised administration."

¶ 5    Upon the oral motion of Karzell's counsel, the circuit court entered an order on May 16, 2023, requiring the collection and submission of DNA samples from Karzell and decedent for testing to determine heirship. The court later continued the matter upon the lab's request for additional samples, as the initial testing was inconclusive. On June 13, 2023, Karzell filed a petition entitled "Petition to Determine the Existence of the Father and Child Relationship." The petition requested the court acknowledge him as the son of decedent. In support, he attached the DNA paternity report indicating a probability of paternity of 99.99996%. Karzell also filed a petition asking the court to remove Constance as the administrator of the estate and appoint him in her stead.

¶ 6    On June 21, 2023, Constance, as administrator of the estate, filed a motion seeking additional DNA testing of Karzell and decedent. The following day, the circuit court entered an order granting her request. On June 22, 2023, Karzell filed a motion for determination of heirship, asking the court to enter an order of heirship identifying himself and Herbert Jaron Boey IV,

2

deceased, as the only natural born children and legal heirs of decedent, and establishing their entitlement to the proceeds from the settlement of the estate.

¶ 7     The circuit court entered an order on August 31, 2023, removing Constance and her counsel as the administrator of the estate and the attorney for the estate, respectively. The court appointed a separate attorney as representative of the estate for the sole purpose of litigating the pending paternity and heirship issues.

¶ 8     On September 14, 2023, Karzell filed a request to admit pursuant to Illinois Supreme Court Rule 216 (eff. May 1, 2013), requesting that Constance and six other identified siblings and half-siblings of decedent admit to the genuineness and authenticity of the DNA paternity report he acquired and attached to his prior motions to determine heirship. Constance, through counsel, submitted a response, stating that she admitted the genuineness and authenticity of the DNA paternity report obtained by Karzell and that decedent could not be excluded as Karzell's biological father. However, she denied that Karzell "established legal paternity" to the deceased. She also denied that decedent represented that he was Karzell's father, claiming a lack of personal knowledge.

¶ 9     On November 1, 2023, Karzell filed a motion to deem facts admitted, arguing that Constance had not responded to his requests in compliance with Rule 216, and asking the court to deem all the requested facts admitted. On November 30, 2023, he filed a motion for summary judgment on his petition to determine the existence of the father and child relationship. On February 14, 2024, Karzell filed a motion for judgment on the pleadings regarding the issues of parentage and heirship. In this motion, he further argued that Constance lacked standing to challenge paternity pursuant to section 602 of the Illinois Parentage Act of 2015 (Act) (750 ILCS 46/602 (West 2022)).

3

¶ 10    The circuit court held a hearing on all pending motions on February 22, 2024. This included Karzell's amended petition to determine parentage, motion to determine heirship, motion for summary judgment, and motion for judgment on the pleadings. It also included three *pro se* motions that Constance filed—one seeking to transfer venue, and two attempting to submit additional evidence—and Karzell's motion to strike all of Constance's *pro se* motions. In attendance were Karzell with counsel, Constance, *pro se*, the court-appointed representative of the estate, and Lisa Boey, *pro se*.

¶ 11    The court allowed Constance and Lisa to speak over Karzell's counsel's objection based on their lack of standing. Lisa alleged that she was the biological half-sister and adopted daughter of decedent, and therefore an heir. She also argued that it was illegal to take DNA samples from decedent, because he could not give consent, and that the statutory limitations period that applied to Karzell's request for DNA testing expired when he turned 20 years of age. Constance argued that the DNA testing was mishandled and inaccurate based on online articles she had printed. The court rejected both women's arguments as conclusory and based on improperly-presented evidence.

¶ 12    Karzell's counsel argued that pursuant to section 602 of the Act (*id.*), Constance lacked standing to challenge paternity because she never filed anything alleging that she was an heir. Counsel also presented two DNA tests establishing a 99.99% probability of paternity, as well as Constance's answers to Karzell's request to admit, in which she admitted to the genuineness and authenticity of the DNA testing she now contested.

¶ 13    The circuit court granted Karzell's motions for summary judgment and judgment on the pleadings, finding no genuine issues of material fact and further stating that none of the allegations set forth in either motion were contested. The court determined that Constance and Lisa presented

4

conclusions, and while Constance appeared to research DNA testing and issues, she was not an expert pursuant to Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) and was not qualified to testify on any DNA issues. It also noted a pending issue regarding the parentage of Lisa Boey and whether she was adopted by decedent. The court's February 22, 2024, order included a finding that Herbert Boey III was the father of Karzell, and directed the administrator of the estate to prepare an order finding heirship. Constance filed a notice of appeal the same day, prior to the entry of the pending heirship order.

¶ 14    On February 23, 2024, an order finding heirship was filed by the clerk of the court but was not signed by the judge. The order contained the following findings: (1) Herbert Boey III died intestate and (2) the court's ruling of February 22, 2024, determined that Karzell Boey was the natural son of decedent. The order stated that decedent "left only the above mentioned sole heir at law and that Karzell Boey is entitled to the proceeds from the settlement of this estate as prescribed by law." The second clause, regarding Karzell being entitled to the proceeds, was scratched out and replaced with a handwritten "TBC."[1] A second, identical order signed by the judge was entered *nunc pro tunc* on March 21, 2024. We provide additional background below, as necessary to analyze the issues on appeal.

¶ 15                                        II. ANALYSIS

¶ 16    On appeal, Constance challenges the validity and admissibility of the DNA test results and raises various claims of misconduct against the attorneys involved in this case. Karzell filed a motion to dismiss Constance's appeal, on the grounds that this court lacks jurisdiction and

---

[1]Presumably "To Be Continued," although the record on appeal does not contain any explanation of the changes to the order.

Constance lacks standing. This court ordered that the motion would be taken with the case, and so we turn to it now.

¶ 17                                          A. Jurisdiction

¶ 18     Regarding jurisdiction, Karzell contends that Constance's appeal from the circuit court's February 22, 2024, order is not an appeal from a final judgment, because the order "did not finally terminate the litigation between the parties." While Karzell provided no support for this argument, we nevertheless have a duty to consider, *sua sponte*, whether we have jurisdiction over an appeal. See *In re Marriage of Mackin*, 391 Ill. App. 3d 518, 519 (2009).

¶ 19     Constance's notice of appeal listed the February 22, 2024, order and "all orders" of 2023 and 2024 as the basis of her appeal. Karzell's motion to dismiss mentions that Constance's notice was filed one day prior to the entry of the order of heirship but does not develop any further argument as to why we may not consider the appeal to include this order.

¶ 20     Pursuant to Illinois Supreme Court Rule 303, a "notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). This rule applies in situations such as here, where the circuit court announces its oral ruling and contemplates the entry of a written motion, but a notice of appeal is filed before the written judgment is entered. See, *e.g.*, *Village of Orion v. Hardi*, 2022 IL App (4th) 220186, ¶ 21; *Pedigo v. Youngblood*, 2015 IL App (4th) 140222, ¶ 15; *Eclipse Manufacturing Co. v. United States Compliance Co.*, 381 Ill. App. 3d 127, 132 (2007). Here, the circuit court explained at the hearing that it was granting Karzell's motions for summary judgment and judgment on the pleadings, which addressed the issues of paternity and heirship. The court also made a finding of parentage and instructed the attorney representing the estate to present "an order finding heirship, consistent

6

with [the court's] rulings here today." Thus, the premature filing of Constance's notice of appeal does not deprive us of jurisdiction.

¶ 21 We next consider whether the court's February 23, 2024, order of heirship was a final and appealable order. The order includes the findings that Karzell is the natural son and sole legal heir of the decedent, but the line ruling that he is entitled to the proceeds from the settlement of the estate is stricken, with a handwritten indication that this issue will be continued. Notably, the court contemplated additional heirs at the February 22, 2024, hearing, stating:

"Now there is a pending issue. I'm not addressing it one way or another, but there is a pending issue that I am concerned about, and that pending issue as to [*sic*] any alleged paternity issues pertaining to Lisa Boey. If she was an adoptive child of the deceased[,] I do believe that ought to be considered if it's being presented in a timely manner."

Despite this prior statement, the court's order explicitly stated that "decedent left *only*" Karzell Boey as the "*sole* heir at law" (emphasis added), which seemingly precludes the aforementioned pending issue. The record is silent as to whether Lisa pursued the issue of her parentage and/or heirship in this matter. Regardless, we do not find the contradictory statements dispositive on the issue of our jurisdiction.

¶ 22 A judgment is considered final for the purposes of appeal " ' "if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." ' " *In re A.H.*, 207 Ill. 2d 590, 594 (2003) (quoting *In re Curtis B.*, 203 Ill. 2d 53, 59 (2002), quoting *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 53, 59 (1998)). Where a judgment is final as to fewer than all parties or claims, Illinois Supreme Court Rule 304(b)(1) provides that a specific written finding by the circuit court is not needed to appeal from "[a] judgment or order entered in the administration of an estate, guardianship, or

7

similar proceedings which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016); see also *In re Estate of Meyer*, 2024 IL App (4th) 230787, ¶ 14; Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988) (explaining that subparagraph (b)(1) applies to orders that "are final in character although entered in comprehensive proceedings that include other matters").

¶ 23 The purpose of this rule is " 'to prevent multiple lawsuits and piecemeal appeals, while encouraging efficiency and granting certainty as to specific issues during the often lengthy process of estate administration.' " *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 41 (quoting *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616-17 (1996)); see also *Thorp*, 282 Ill. App. 3d at 616-17 ("Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the result of which may require reopening the estate and marshalling assets that have already been distributed."). However, such orders must still be final—while they need not resolve all matters in the proceedings, they must resolve all matters on the particular issue. *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 84.

¶ 24 Karzell does not cite to any authority discussing a similar situation to the one before us in which an appeal is taken from an order finding parentage and heirship, where there may be other heirs impacting Karzell's rights to the proceeds of the settlement of the estate. However, in the wardship case of *In re Armani S.*, 2020 IL App (1st) 200616, ¶ 20, the First District found that jurisdiction existed under Rule 304(b)(1) over an appeal from an order "finally determin[ing]" the putative father's parentage of the minor, where both the minor and putative father were parties to the underlying case.

¶ 25 Similarly, *In re Estate of Meyer*, 2024 IL App (4th) 230787, ¶ 16, found an order construing a will to entitle the respondent to sole ownership of certain real property was appealable

under Rule 304(b)(1), if it had been timely filed. The court reasoned that by directing the executor to have the property alone succeed to the respondent, the lower court "finally determined the rights of all interested parties—the four named beneficiaries—with respect to the disposition of the *** property." *Id.* ¶¶ 12, 16. Although the court below did not rule on the issue of what actions, if any, the executor should take to equalize the distribution of the estate's assets, that was a separate and distinct issue that had no bearing on the adjudicated issue of the ownership of the property. *Id.* ¶¶ 12, 17; see also *Thorpe*, 282 Ill. App. 3d at 617 (order directing the executor to sell a piece of real estate was final and appealable under Rule 304(b)(1), because "[w]hile the exact dollar amounts to be received by the legatees were yet to be ascertained, their rights under the will had been finally determined").

¶ 26    Here, the court's February 23, 2024, order definitively determined the question of Karzell's status as the natural son and legal heir of the decedent. The only remaining issue was the specific amount of the proceeds from the settlement of the estate to which Karzell was entitled. While the circuit court noted the pending question of Lisa Boey's potential status as another heir, her involvement in the underlying probate case is unclear from the record. Despite seeming to have left this question open, the circuit court was clear that the decedent "left only" Karzell as his "sole heir at law." We find that the court's order fully determined the question of Karzell's parentage and heirship in the underlying estate proceedings, and, as in the cases cited above, any question of the exact distribution of estate proceedings to Karzell is a separate and distinct issue that does not bar our jurisdiction over the present appeal pursuant to Rule 304(b)(1).

¶ 27                                B. Standing

¶ 28    Karzell next argues that Constance lacks standing to appeal. In support, Karzell argues that Constance is not named as an heir beneficiary of the estate in either her or Karzell's petition for

9

letters of independent administration. He further relies on the circuit court's removal of Constance as administrator of the estate in its August 31, 2023, order, well before Constance filed her notice of appeal and the court entered its February 22, 2024, order finding paternity. Karzell thus argues that Constance cannot challenge the court's order, as she does not fall under any category of an individual with standing to maintain a proceeding to adjudicate parentage under section 602 of the Act (750 ILCS 46/602 (West 2022)).

¶ 29    Article 6 of the Act is titled "Proceeding to Adjudicate Parentage" and specifically authorizes civil proceedings "to adjudicate the parentage of a child." *Id.* § 601. Section 602 of the Act lists who has standing to maintain such proceedings. *Id.* § 602. Section 603 states that the provisions of the Act "shall apply if parentage is at issue," even if the civil action is not brought under the Act. *Id.* § 603(a). In the present matter, Constance challenges the circuit court's findings that Karzell is the decedent's biological son and sole legal heir.

¶ 30    Karzell does not cite any authority interpreting section 602 of the Act or explain how section 602's limit on who can maintain a parentage proceeding would also limit who may appeal a finding of parentage in a probate proceeding. We note that Karzell raised his standing argument before the circuit court at the hearing on the pending motions and petitions, and the court expressed doubt as to the possibility that Constance would not have standing to contest Karzell's paternity as the decedent's sister and potential heir. After allowing for further argument from Karzell, the court stated that it made no ruling on the standing question at that time. The court made no further ruling on this question before granting Karzell's motions for summary judgment and judgment on the pleadings. While the latter motion referenced the challenge to Constance's standing, the court did not address it in its ruling on the motion. It also did not address the issue in either of its written orders on paternity and heirship.

¶ 31    A plaintiff need not allege facts establishing standing; rather, the defendant bears the burden of proving lack of standing as an affirmative defense. *Rowe v. Raoul*, 2023 IL 129248, ¶ 22. Without any support from Karzell for why Constance cannot now appeal from the circuit court's orders rendering a decision on her challenge to Karzell's paternity and heirship, aside from a conclusory citation to the Act, we find that she may maintain the present appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***."); *In re Estate of Doyle*, 362 Ill. App. 3d 293, 301 (2005) ("a court of review is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented or the inadequately presented argument is deemed forfeited"). She was unquestionably a party to Karzell's motions for summary judgment and judgment on the pleadings and has been involved in the underlying proceedings since their beginning. Because we hold that the issue of standing was forfeited, we find Constance's issues on appeal must be considered.

¶ 32                                C. Issues on Appeal

¶ 33    On appeal, Constance primarily challenges the validity and admissibility of the DNA test results. Additionally, she argues that Karzell's counsel improperly filed the petition to determine parentage under a repealed statute and raises several claims of attorney misconduct against her original and second attorneys under various theories.

¶ 34                        i. *Validity and Admissibility of DNA Evidence*

¶ 35    As he notes in his response, Karzell served requests to admit on Constance pursuant to Illinois Supreme Court Rule 216 (eff. July 1, 2014). In her response to those requests, Constance admitted to the genuineness and authenticity of both DNA tests conducted in this matter, as well as to the facts that two experts, if called to testify, would testify that the DNA showed a probability of paternity of 99.99996%, and that the decedent "cannot be excluded as the biological father of"

11

Karzell. At the hearing on all pending motions and petitions, Constance presented a printout of an article she found online about DNA testing done on Beethoven's hair and argued that the DNA sample in this case was "mishandled" because it was tested two months after collection. The circuit court found that Constance was not an expert pursuant to Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) and was not qualified to testify on any DNA issues. The court further stated that it was "clear to the court" that Constance wanted to present conclusions and issues that had not been properly presented as evidence.

¶ 36 On appeal, Constance argues that (1) the chain of custody of the DNA samples was not maintained, and the samples from the decedent should be deemed inadmissible due to "degradation and contamination" from, *inter alia*, formaldehyde causing "cross-linking of DNA strands," and the decedent's liver conditions impacting DNA integrity; (2) the lab "violated procedural standards, impacting the reliability of the DNA results," as allegedly evidenced by the fact that the initial specimen from the decedent's hair did not reveal any DNA; (3) Karzell's attorney committed misconduct by failing to correct the lab when individuals from the lab stated they would obtain additional DNA samples later that same day, despite the fact that the circuit court's order allowing for additional testing had not yet been issued, and by communicating with the lab through unsecured email; and (4) Karzell's attorney violated the court's order to use the LabCorp facility in Maryville, Illinois, and compromised the chain of custody by using a LabCorp facility located in Missouri. Constance argues that each of the above contributed to the unreliability of the DNA samples tested in this case and concludes that evidence of the DNA testing and analysis should not have been considered.

¶ 37 As the circuit court noted during its hearing, Constance offered nothing more than conclusions regarding her challenges to the DNA testing and report, she had not proven herself as

12

an expert witness to testify on issues of DNA collection, preservation, testing, or analysis. See *Cleveringa v. J.I. Case Co.*, 230 Ill. App. 3d 831, 851 (1992) ("There is no presumption that a witness is competent to give an expert opinion, and it is incumbent upon the party offering the witness to show that he possesses the necessary learning, knowledge, skill, or practical experience to enable him to testify as an expert."). Despite having the opportunity to present evidence, she failed to present any witnesses, including a qualified expert, to support her conclusions or explain how her articles were relevant to DNA testing in this case. We therefore find that the circuit court properly rejected her arguments on this point.

¶ 38    Next, Constance raises for the first time on appeal the argument that Karzell's attorney filed the amended petition to determine parentage under the repealed Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (repealed by Pub. Act 99-85 (eff. Jan. 1, 2016))), rather than the Illinois Parentage Act of 2015 (750 ILCS 46/101 *et seq.* (West 2022)). This argument is forfeited. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal."); *In re S.L.*, 2014 IL 115424, ¶ 17; see also 735 ILCS 5/2-612(c) (West 2022) ("All defects in pleadings, either in form or substance, not objected to in the trial court are waived."). Relatedly, Constance offers nothing more than general citations to statutes and caselaw and conclusory, unsupported statements for many of the issues on appeal. See *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5 (A reviewing court "is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." (Internal quotation marks omitted.)).

13

¶ 39    Therefore, we conclude the court properly rejected all of Constance's arguments regarding the DNA collection, preservation, testing, and reports. We further find her arguments regarding Karzell's attorney and his amended petition are forfeited.

¶ 40                                  ii. *Attorney Misconduct*

¶ 41    Next, Constance argues that her attorneys in the underlying case committed misconduct under several theories. Her claims on appeal include: (1) "breach of fiduciary duty" against her original attorney ("Collins") for failing to disclose the results of the DNA testing to her prior to the court hearing; (2) negligence against Collins for failing to prepare a will for decedent, in which Constance would be named the sole beneficiary; (3) conflict of interest where Collins also represented the estate; (4) ineffective assistance of counsel by her second attorney ("Campagna") based on the argument before the court that he had not received discovery from Collins, and could not prepare for trial; (5) a second conflict of interest against Collins because Constance allegedly overheard Collins telling someone at the DNA lab that "he did not want to test a live relative," and she concluded that he withheld DNA evidence; and (6) breach of ethics because Campagna filed a response to Karzell's requests to admit pursuant to Rule 216 without Constance's knowledge or consent, and the document of admissions she signed was not the same as the one filed with the court.

¶ 42    Claims for ineffective assistance of counsel are inappropriate in a civil case. See *People ex rel. Director of Department of Corrections v. Melton*, 2014 IL App (4th) 130700, ¶ 18. Any claims Constance may have against either of her attorneys may be raised in an independent suit for malpractice or breach of fiduciary duty. Lastly, even if Constance could assert these claims, we cannot address any claims based on matters outside the record, as there is no evidentiary support before this court to support them.

14

¶ 43                                    iii. *Compliance With News Station Request*

¶ 44    Constance raises one additional issue on appeal, which is that the circuit court erred by not complying with a news station's request for the case file in the underlying matter. In support, she alleges that the court breached its duty to provide public access to court records. The present appeal concerns Constance's challenge to the circuit court's determination of paternity and heirship between the decedent and Karzell, as well as the court's rulings on Karzell's motions concerning the same issue. As such, we find Constance's argument is beyond the scope of the present appeal.

¶ 45                                    III. CONCLUSION

¶ 46    For the above reasons, we find that the circuit court did not err in granting Karzell's motions for summary judgment and judgment on the pleadings, or in finding him to be the natural son and legal heir of the decedent. Accordingly, we deny Karzell's motion to dismiss the appeal and affirm the judgment of the circuit court.


¶ 47    Motion denied; judgment affirmed.